Charles M. Hughes, J.
The plaintiffs have brought an action to recover possession of a parcel of land allegedly wrongfully enclosed by the defendants’ fence, together with damages for withholding the same.
The proof upon the trial revealed that the plaintiffs are the record owners of a parcel described as Lot 101 and the westerly 10 feet of Lot 100 as shown on a map of Grove Park in the Town of Rotterdam, dated May 20, 1914, and made by L. B. Sebring, C. E., and filed in the Schenectady County Clerk’s office. The lot described in plaintiffs’ deed is 45 feet in width and 115 feet in depth. The lot fronts on a street known as Kenmore Avenue. The plaintiffs became owners of the above parcel on March 4, 1949.
The defendants are record owners of a parcel of land which is designated as Lot No. 96 on the above-mentioned map. This lot fronts on a street known as Wilson Avenue, and the deed description shows the frontage is 57 feet along the same; northerly by Lot No. 95, as designated on said map, 125 feet along the same; westerly and in the rear by a portion of Lot No. 94, as designated on said map, 35 feet along the same; and southerly by the rear of Lots Nos. 97, 98, 99, 100 and a portion of Lot No. 101, as designated on said map, 128 feet along the same. The aforesaid dimensions are designated more or less.
The defendants obtained title to the above premises on October 27, 1945. The defendants have fenced in the area which is in dispute. This area is an irregular-shaped parcel, measuring 22 feet by 13 feet by 22 feet, more or less, by 11.3 feet.
The Grove Park map fails to have any dimensions for the depth of the side lines or for the rear of Lot 96. The only map distance given is the dimension of 57 feet for the front line of Lot 96 on Wilson Avenue and that is not an exact distance, *650 being given as plus or minus. It has been established by the testimony of the surveyors for the plaintiffs and the defendants that if the distances given in the defendants’ deed to Lot 96 are correct, then the depth of the lots fronting on Kenmore Avenue would be shorter than the distances given on the map. The Grove Park map sets up the descriptions of Lots 100 and 101 as being 35 feet in width and 115 feet in depth.
The purpose of a description in a conveyance is to identify the land intended to be conveyed, and that part of the description which best identifies the land, in accordance with the intent of the parties, is the controlling part of the description. Lots 100 and 101 are fully described by metes and bounds on the said map, whereas Lot No. 96 has only one line description along Wilson Avenue, and that line is as a plus or minus. The plaintiffs’ parcel of land is described with accuracy by deed description and upon the Grove Park map. It is a well-established principle of law that when there is a conflict between a specific description by metes and bounds and a lot as shown upon a map by which a tract of land is conveyed, the latter provision will control. When in a deed the lot intended to be conveyed is properly designated by its number on a recorded plot, but the deed, in attempting to give a more particular description, incorrectly or inaccurately sets forth the dimensions of the same, such designation by lot number will prevail over such other description in the deed. (See Wessel v. Cramer, 56 App. Div. 30; People v. Chateaugay Ore & Iron Co., 198 App. Div. 173, affd. 234 N. Y. 632.) The plaintiffs’ lots are the more perfectly described by deed and map reference, and, therefore, any conflict between the said parcels in question must give way to the plaintiffs ’ parcel.
The proof revealed that the map and deed distances did not agree with the actual ground area involved.
The parties to this action trace their chain of title to a common grantor. In this action it has been shown that Ida O. Kelly and Anna P. Cooney were the owners and common grantors of Lots 96, 100 and 101. Lot 100 was originally sold by them on November 20,1917; Lot No. 101, on May 7,1917; and Lot No. 96 on May 22,1919. The plaintiffs, through a subsequent conveyance dated March 4, 1949, obtained title to Lot No. 101 and the westerly 10 feet of Lot 100.
The defendants obtained title to Lot No. 96, October 27,1945. They proceeded to have the lot surveyed in 1946, and erected a fence during the same year in accordance with the survey.
In determining the effect to be given the deeds of the respective parties, the court must accept certain basic rules governing *651 real property disputes. Here both parties trace their chain of title back to a common grantor. The first conveyance and deed descriptions contained in the plaintiffs’ chain of title will control in the event of any overlapping of description. The defendants’ chain of title arising later in time will have to give way to any property previously conveyed by the common grantor. The common grantor can only convey that property which the common grantor has left to convey, regardless of what his deed may specify in metes and bounds. This basic rule of construction establishes that the plaintiffs have record title to the land in dispute. The record title, however, may be affected by the actions of the parties where a line is in dispute and the adjoining owners locate and fix a line and thereafter acquiesce and adhere to the existence of the line.
The defendants have cited the case of Quigg v. Treadway (222 App. Div. 164) as an authority for their position. In that case the defendants Treadway and Groteclass were adjoining owners, and they located the boundary line in dispute and acquiesced in its location for several years. The facts further show that the agent of the defendant Groteclass pointed out to the plaintiffs, prior to the conveyance to them of the lot, the actual boundary line and monuments which located the line. The plaintiffs, therefore, had actual notice of the location of the line. The court held the plaintiffs were estopped to assert title to the disputed land.
The proof upon the trial showed that the plaintiffs saw the fence when they bought the property. It was not shown that the plaintiffs had any knowledge at that time that showed that there was any dispute concerning the property line or whether the fence was properly located.
The plaintiffs’ deed did not contain any reference to any fence or fence posts. If these objects were used as monuments in describing the parcel conveyed to the plaintiffs, the plaintiffs would be bound by any such description. The evidence further showed that the Barbers, who were the plaintiffs’ grantors and predecessors in title, raised some question concerning the location of the fence. There was no evidence in the record of any bilateral action on the part of the defendants and any owner of Lot No. 101 and part of Lot No. 100 as to the establishment of the line when the fence was erected. Any action on the part of the defendant in erecting the fence was purely unilateral. It is readily seen that in order for the defendants to fall within the purview of the Quigg v. Treadway case (supra) there must be a dispute between the co-owners, and the boundary must then *652 be located by the parties, and acquiesced in its location for several years before an estoppel is created.
The authority of McMahon v. Morse (135 Misc. 233) cited by the defendants involved a case where the defendant had fenced in the area in question under a claim of title and held the same adversely for more than 20 years. No claim of title by adverse possession has been made by the defendants in the case at bar.
It should be noted that the Statute of Limitations in an action to recover real property is 15 years. (See Civ. Prac. Act, §§ 34, 37.) Title by adverse possession can arise only after the statutory period of 15 years is satisfied. (See Civ. Prac. Act, §§ 37, 38, 39.)
Here, the defendants have not been in possession for the statutory period, and, therefore, the question is presented whether the line has been established by the equitable principle of estoppel.
Acquiescence will establish a boundary without the aid of the statutory prescription period of 15 years where the acquiescence is based upon doubt or dispute between the parties as to where the line is and a resolving of the doubt or the compromising of the difference by an agreement upon a line. There has to be a composition of differences which involves bilateral action in determining the location of an agreed line. Unilateral action requires the running of the statutory period before the line is fixed. Where neighboring properties have composed their differences and in good faith agreed upon a line and have fixed their monuments, erected their fences and maintained them, the acquiescence need not continue the statutory period in order to establish or fix the line. This, however, was not the case here. See Erie R. R. Co. v. Kaplowitz (23 Misc 2d 807, 808) cited by the defendants, which states: “ Where a particular line is definitely fixed and located by one or both of two adjoining owners as the boundary line between their lands, and said line is thereafter for several years acquiesced in and steadily adhered to by both owners as the true boundary line, there arises a presumption that it is the true line.” The court then goes on to say (p. 808): ‘ ‘ And where a boundary line has been practically located and acquiesced in by the parties for upwards of 15 years (the period now required to establish title by adverse possession), it is generally held that the presumption becomes absolute and that the line is conclusively established.” (Citing numerous cases.)
The proof upon the trial did not establish that the plaintiffs, or their predecessors in title, jointly established or acquiesced *653 in the fence as being the true line between their parcels. The conversations had between the parties showed that there was a dispute as to the location of the fence and the rear line. The plaintiffs and their predecessors in title (the Barbers) both questioned the line established by the erection of the fence by the defendants. This action did not constitute acquiescence. The defendants went into possession of the land in dispute in 1946. At that time, the owners of Lots Nos. 101 and 100 had a cause of action for ejectment, which can be brought at any time within 15 years from the date that the cause of action accrued. The statutory period of 15 years has not elapsed. [This action was commenced in 1957.]
This court, accordingly, grants judgment in accordance with the plaintiffs’ prayer for relief, with costs and disbursements. The court makes no award as to damages sustained to the plaintiffs inasmuch as no proof was offered on the same.