## The Lane Construction Corporation v. The State of Vermont and Highway Board

[265 A.2d 441]

No. 81-69

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed April 7, 1970

*Wick, Dinse & Allen,* Burlington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *Louis P. Peck,* Assistant Attorney General, for the State.

**Shangraw, J.** The subject matter of this litigation was initially involved in two separate actions bearing docket numbers in the Washington County Court, 12175 and 12363. The defendant filed motions to dismiss, which were granted. On appeal to this Court the action of the trial court was reversed and causes remanded. *The Lane Construction Corporation* v. *The State of Vermont and Highway Board,* 127 Vt. 287, 248 A.2d 508.

We are now only concerned with case numbered 12363, in that the earlier docket case, docket No. 12175 was discontinued immediately prior to the introduction of evidence on March 24, 1969 in case No. 12363.

Plaintiff, The Lane Construction Corporation, will hereinafter be referred to as the Contractor. The defendant, the

State of Vermont, acting by and through its Highway Board, will be referred to as the State.

This is an action in contract. Plaintiff seeks to recover the sum of $9,545.00. Certain facts were agreed to by the parties. Following a hearing, findings of fact were made by the trial court and judgment later entered in favor of the defendant. Plaintiff has appealed to this Court for review.

The Contractor and the State entered into a contract dated April 13, 1961 and by its terms the Contractor was to construct for the State a portion of the Interstate Highway system in the Town of Williston, Vermont, which project is designated Highway Project Richmond-Williston I 89-2(9) Contract 3. The bid submitted by the Contractor and accepted by the State for the proposed construction was $997,241.20.

The Contractor, in due course, completed the work called for in the contract to the satisfaction of the State, outside of the Contractor's refusal to assume liability for damage done to the water supply of Harold J. and Margaret Lyon.

Mr. & Mrs. Lyon owned a water reservoir which was located approximately 55 feet northerly of the north side line of the right-of-way of the State. The terrain southerly of the Lyon reservoir, including the area within the right-of-way and beyond to the south, was wet and sloped northerly towards the reservoir.

The reservoir was supplied by an underground source of water that flowed in a northerly direction underground from the lands of higher elevation located to the south, and then passed through land within the right-of-way and to the Lyon reservoir. The reservoir supplied the Lyons with their drinking water and other domestic use.

The area of Contract 3 adjacent to the Lyon reservoir called for a fill, that is, a building up or raising the elevation of the surface on the completed highway above the natural level of the ground, as distinguished from a cut. The excavating in the area of the Lyon reservoir consisted of so-called stripping and grubbing, i.e. removing topsoil, stumps, roots and brush.

During the time the Contractor was stripping and grubbing in this area, the Lyon water supply became silted and interrupted to the point of destruction as a result of the Contractor's operations.

At no time during the construction of the highway, including those periods while excavation, stripping and grubbing was in progress, were any springs, wells or underground pipes discovered in the right-of-way adjacent to the Lyon reservoir.

The underground source of water that supplied the reservoir was not indicated on the plan submitted to the plaintiff prior to the time it bid on the project. There were no water springs, wells, or underground water pipes of any kind shown on the plans for the contract.

When the damage to the Lyon water supply was first discovered, the Contractor was authorized by the State to construct a drainage ditch. The excavated dirt was to be bermed on the north side of the ditch and around the Lyon reservoir. This work was done by the Contractor and paid for by the State. The ditch was located inside the right-of-way. The attempt to remedy the situation proved ineffective.

The Contractor was directed to correct the damage to the Lyon water supply in accordance with Section 7.11 of the Standard Specifications for Highway and Bridge Construction.

A dispute arose between the State and the Contractor as to the responsibility of the Contractor, under the provisions of the contract, to remedy the alleged damage to the Lyon water supply. The Contractor took the position that under the contract it had no obligation to remedy the alleged damage without reasonable reimbursement. The State took a contrary position.

The Contractor agreed to remedy the situation if a supplementary agreement providing reasonable compensation therefor was entered into. This, the State declined to do.

Finally, the State entered into an agreement with J. A. Feeley & Son, Incorporated, to remedy the alleged damage to the Lyons' water supply. This work was done and the drilling company was paid $9,545.00 by the State for its work. This amount was charged against the money which would otherwise have been payable to the Contractor. This sum is the subject matter of this suit.

A Mr. Rance Banner was the Contractor's supervisor of construction on the construction contract involved here. Mr. John R. Hughes was the State's resident engineer on the project.

The duties of a resident engineer on projects of this nature is to make certain the Contractor performs the labor and furnishes the materials in accordance with the terms and conditions of the contract and specifications, or in other words, to make certain insofar as it is possible that the Contractor does not deviate from the plans and specifications of the contract.

Prior to the start of the road construction, Mr. Banner and Mr. Hughes "cruised" the area of construction, and while in the vicinity of the Lyon reservoir, Mr. Hughes directed Mr. Banner's attention to it. The reservoir was shown on the plan.

The trial court concluded its findings by stating that the Lyon reservoir was an item within the contemplation of Paragraph 7.11 of the Standard Specifications, which the plaintiff was bound to recognize and take into consideration in its bidding and subsequent construction operations in that area. The court below additionally found that the Contractor was obligated under its contract to use suitable precautions to prevent injury to, or destruction of, the Lyons' water supply.

The basic question to be resolved is whether the Contractor was obligated to restore, repair, or replace the damage done to the water supply under the facts of this case and the contract into which it entered with the State. The Standard specifications for Highway and Bridge Construction are a part of the contract here considered. At this point we call attention to specifications 2.05 and 7.11 thereof.

Specification 2.05 in part states:

> "The bidder shall examine carefully the site of the work contemplated and the proposal, plans, specifications and proposal forms therefor. It will be assumed that the bidder or contractor has investigated and is satisfied as to the conditions to be encountered, as to the character and quantities of the work to be performed and materials to be furnished, and as to the requirements of the proposal, plans, specifications and contract forms."

The findings of fact sets forth verbatim specification 7.11. Following are some of the responsibilities imposed therein on the Contractor.

> "The Contractor * * * shall be responsible for the preservation of all public and private property, trees, monu-

ments, etc., along and adjacent to the work and shall use every precaution necessary to prevent damage or injury thereto.

"He shall be responsible for all damage or injury to property of any character during the prosecution of the work, resulting from any act, omission, neglect or misconduct * * *.

"When or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission, neglect, or misconduct in the execution of the work, * * * he shall restore, at his expense, such property * * * or he shall make good such damage or injury in an acceptable manner.

"His attention is called to the various public or private services which include but are not limited to: gas, water, sewer and drainage pipes, springs and wells, * * * that may be located on or adjacent to the project, both above, on or under the ground, and whether shown on the Plans or not * * *.

"The Contractor shall be held liable for all damage done, because of his construction, to these aforementioned services from the beginning of construction to the satisfactory completion of the project, *except as hereinafter provided.*" (Italics supplied.)

"For such used or developed springs, wells and underground pipes as are shown on the Plans, the Contractor shall assume full liability."

Continuing in specification 7.11, plaintiff, the Contractor, claims non-liability for the damage done to the Lyon water supply by its reliance on the following exception recited therein.

"For such used or developed springs, wells and underground pipes as are within the right of way and not shown on the Plans, the Contractor will not be held liable for damage up to the time of discovery, except when or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission, neglect or misconduct in the execution of the work * * *."

Plaintiff contends in its brief that the findings of fact do not support the judgment order. In particular, it points to findings 13 and 18 which state:

> "13. The underground source of water that supplied the Lyon reservoir was not indicated on the plans submitted to the plaintiff prior to the time it bid on the contract.
>
> "18. At no time during construction, including those periods during which excavation (stripping and grubbing) was in progress, were there any springs, wells or underground pipes discovered adjacent to the Lyon reservoir, and specifically, no used or developed springs or wells as expressly set forth in Standard Specification 7.11."

Plaintiff claims that the damage to the Lyon water supply resulted in an interference with an unmarked and undiscovered underground stream which ran under the right-of-way before feeding into the reservoir and that under the exception contained in section 7.11 he was not chargeable with knowledge thereof, and hence not responsible for the damage.

It also urges that the protection to water supplies, which the exception deals with, should be interpreted to include underground streams of water, as well as springs, wells, and underground pipes. There is no evidence to support its claims that the reservoir was fed by any underground stream of water. Having in mind the wet condition of the area southerly of the reservoir, it is logical to assume that the water supply came from percolating waters. At least, the percolating source of water is more consistent with the findings as a whole, than is an underground stream of water.

Under section 2.05 the bidder (Contractor) was required to "examine carefully the site of the work contemplated. It is therein assumed that the bidder or contractor is satisfied as to the "conditions to be encountered". In this case the area was viewed by a representative of the Contractor and State. There is nothing in the record to indicate that the Contractor took any step to determine whether or not the wet area in question was the source of the Lyon water supply.

The reservoir and its proximity to the proposed highway was shown on the Plan and pointed out to the Contractor's representative.

The terrain southerly of the Lyon reservoir, within the right-of-way, and southerly thereof, was wet and sloped northerly towards the reservoir. It must be assumed that the contractor was cognizant of the fact that water, through mere gravity, seeks the lowest possible level, and that the reservoir's supply of water came from this area.

The exception in section 7.11, upon which plaintiff relies, relates to "springs, wells or underground pipes" which if found, and not shown on the plan, would have exonerated the Contractor from liability for damage thereto up to the time of discovery. The trial court properly saw no cause to deviate from, or enlarge, the plain meaning of the exception to include the situation as revealed by the facts. We hold that the Lyons' water supply was not within the scope of the limited exception as claimed by plaintiff.

The lower court further determined that the Lyon reservoir was within the contemplation of section 7.11 which the Contractor was required to take into consideration in its bidding and subsequent operations in that area. It was further found that the Contractor was obligated, under its contract, to use suitable precautions to prevent injury to, or destruction of, the Lyons' water supply.

■ This Court must affirm the findings if there is any credible evidence to support them, and must construe those findings so as to support the judgment, if possible. *National Grange Mutual Insurance Company* v. *Churchill, et al.*, 126 Vt. 428, 432, 234 A.2d 334.

■ Foresight of harm lies at the foundation of negligence. The opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent of knowledge itself. Such knowledge may be implied, imputed and constructed from the circumstances. Knowledge of true facts may be essential to careful conduct, and where knowledge is required, voluntary ignorance is culpable and affords no protection from legal liability. *Thompson* v. *Green Mountain Power Corporation*, 120 Vt. 478, 483, 144 A.2d 786.

Here, the sloping grade and wet condition of the land southerly of the reservoir was in plain view. Under the existing conditions it was within the province of the triers of fact to determine whether the failure of the plaintiff to investigate further constituted neglect. The trial court properly held that under the provisions of specification 7.11 plaintiff was obligated to use suitable precautions to prevent injury or destruction of the Lyons' water supply.

The Contractor claims in its brief that the damage done in this case was beyond its control. This is naked assertion and without evidentiary support. It has failed to produce a record which substantiates such a claim. *Appliance Acceptance Co.* v. *Stevens, et al.,* 121 Vt. 484, 487, 160 A.2d 888.

The judgment should not be disturbed.

*Judgment affirmed.*