### State Highway Board v. Jamac Corporation and Rosalind A. Feuer, et al.

[310 A.2d 120]

No. 84-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed October 2, 1973

*Abatiell & Abatiell,* Rutland, for Jamac Corporation.

*Dick, Hackel & Hull,* Rutland, for Rosalind A. Feuer.

**Barney, J.** The potential allocation of damages from highway condemnation brought a boundary dispute into focus. Thereupon the highway board brought this equitable declaratory judgment action to determine the precise extent of its obligation to compensate each landowner. The lower court, in response to the petition, went ahead to hear evidence and make findings, and determined the boundaries on all sides of the disputed piece, even though the highway taking did not dislocate every bound.

The piece of land involved is a small parcel conveyed from the midst of a larger holding that entirely surrounds it. The Jamac Corporation, the grantor, still retains such of the surrounding lands not taken for highway purposes. This corporation originally conveyed the parcel to Lake Tanners, Inc. That corporation represented a business operation conducted by David Feuer. Before this litigation arose, this same parcel had been reconveyed to David Feuer's wife and children. All of these members of the Feuer family are defendants. David Feuer conducted the negotiations in connection with the purchase of the parcel with James S. Abatiell, president and principal stockholder of Jamac Corporation.

The parcel itself has pretty much the shape of a block "L", with the top of the "L" headed easterly. It is variously claimed to be from six to ten acres in size. The highway taking

passes along the southerly side, converting the "L" to an "I", and also crosses the easterly portion of the parcel in a north-south direction.

The dispute centers around the exact shape of the parcel, with the Feuers contending for the full block "L", and the Jamac Corporation clipping corners from the lower left or northeasterly corner and both sides of the top or easterly extension of the "L". The deed description reads as follows:

"Commencing at a point in the west side of the MacRae Road so-called, said point being north of the three-story packing house at the first telephone pole, and running thence westerly past the water tower so-called, to a stake in the gulley, thence running southerly to an old dead apple tree situated south westerly of the water spring, thence running easterly to a stake on the knoll about three hundred (300) feet west of the private road, thence running northerly to the private road south of the barn, thence running easterly across the said Mac-Rae Road in a line with the telephone pole with the transformer, to an old dead apple tree situated about thirty (30) feet south from the private road running past the No. 2 packing house, thence north to a stake, thence westerly to the place of beginning, supposed to contain about six (6) acres more or less. Being a part of the same land and premises deeded to Jamac Corporation by John E. Wells and wife by their deed dated June 6, 1946, and recorded in the land records of the Town of Castleton in Book 43 at page 559, to which deed reference is hereby had. Subject to any and all rights, easements and privileges of record."

A sketch of the property being conveyed, not to scale, prepared at the time of the sale, was introduced into evidence, and showed the shape of the property as the block "L" above mentioned. Also, two surveys were in evidence that were claimed to illustrate the positions of each side. One was the Rice survey, prepared at the joint expense of grantor and grantee just after the original sale, and the other was the Spencer survey, prepared near the time of litigation, and taking into account the original sketch. The two surveys yielded different acreages, the Rice survey being 7 2/3 acres and

the Spencer survey 10 1/10 acres. The lower court found that the Spencer survey represented the grant agreed to and deeded between the parties, and determined the boundaries from it. The Jamac Corporation, after some equivocation, rested its claim on the Rice survey, and has appealed.

■ The first question relates to the right of the trial court to give relief beyond the bounds of the actual highway taking. The original complaint by the highway board requested just that relief. No responsive pleading challenging or objecting to that prayer was filed by defendant Jamac, or any other defendant. In view of the interrelationship of the boundaries and the extent of the taking as compared to the whole parcel, the petition was not unreasonable. More important, the action is in the nature of an interpleader, and properly equitable, supporting resolution of the whole controversy as an equitable action. *Cabot* v. *Hemingway*, 115 Vt. 321, 323, 58 A.2d 823 (1948). Moreover, the state, as stakeholder of damages, also has an interest as a succeeding titleholder whose property interests as against all defendants need consistent resolution. See *Price* v. *Rowell*, 121 Vt. 393, 399, 159 A.2d 622 (1960). Under these circumstances, Jamac's challenge to the trial court's equitable jurisdiction will not prevail.

■ Jamac also contends that the passage of fifteen years has settled the boundary question in favor of its claim. Under the provisions of V.R.C.P. 8(c), this defense is available only if properly pleaded, which was not done here. Furthermore, the testimony reveals that the dispute between the parties as to the boundaries was first "unfurled" by Jamac to its grantee at a time less than fifteen years before this action. *Percival* v. *Fletcher*, 121 Vt. 291, 297, 155 A.2d 737 (1959).

The remaining questions are evidentiary. The defendant Jamac challenges the findings generally as being unsupported and contrary to the evidence. The issue thus raised must, of course, be resolved on the basis that this Court must accept the findings of the lower court if there is any evidence fairly and reasonably tending to support them. *Leno* v. *Meunier*, 125 Vt. 30, 34, 209 A.2d 485 (1965). The evidence must be taken in the light most favorable to the prevailing party, and construe the findings so as to support the judgment, if possi-

ble. *Lane Construction Corp.* v. *State,* 128 Vt. 421, 428, 265 A.2d 441 (1970).

 The Spencer survey, adopted by the trial court as the accurate description of the parcel conveyed, admittedly encompasses a little more than ten acres. The descriptive language in the deed refers to the parcel as "supposed to contain about six (6) acres more or less." Although quantity may be of some use in selecting between claimed boundaries, it is regarded as the least reliable of all descriptive particulars. *Parrow* v. *Proulx,* 111 Vt. 274, 280, 15 A.2d 835 (1940). It is the practice to take note of possible variations between the quantity call and the land actually conveyed by the boundaries described in the deed by use of such phrases as "more or less" or "about." In this deed the language was even more strongly conditional, and indicates its much lesser significance as an expression of the intention of the parties. The contention of Jamac would elevate this phrase into a governing call the circumstances clearly do not warrant.

██ ██ The Jamac position also challenges the sketch made at the time of the land sale as having any proper weight with respect to the agreement between the parties. But this Court finds the lower court quite rightly, under the testimony in the case, viewed this sketch as evidence of the nature and shape of the parcel intended to be conveyed. In so doing, the court was in part construing the extent of the grant against the grantor, who drew the deed, and in favor of the grantee. This was proper. *deNeegaard* v. *Dillingham,* 123 Vt. 327, 332, 187 A.2d 494 (1963).

Indeed, the language of the deed may well be taken to favor the Spencer survey, rather than the Rice survey. The language of the call "thence running easterly across said MacRae Road in a line with the telephone pole with the transformer, to an old dead apple tree situated about thirty (30) feet south from the private road running past the No. 2 packing house," suggests a straight line, as found in the sketch and on the Spencer survey, rather than a line changing direction at the telephone pole as on the Rice survey. Similarly, the beginning call at a point in the west side of MacRae Road is for a line running "westerly". The closing call from the

northeast corner calls for a line running "westerly" to a point of beginning. There is nothing to suggest that the bearing line of those two calls are different, or that that northerly boundary is anything other than a straight line running "westerly", as shown on the sketch and the Spencer survey.

This view of the evidence in the case is not overcome by the specific monuments indicated on the Rice survey. As the findings point out, except where the Spencer and Rice surveys concur, the evidence did not establish that the points on the ground, even if they could be found, that the Rice survey used, were monuments of the deed. The evidence did not disclose who placed the marking stakes used by Rice, who made his survey in the absence of both parties. The findings also report that when Feuer challenged the survey as not being in accordance with the sketch, Abatiell assured him that he would straighten it out. It should be noted here that the property was formerly a commercial orchard with many old apple trees, and that at the time of the Spencer survey, the easterly end of the property had been substantially cleared and bulldozed by highway contractors, so that any monuments in that area were unidentifiable. However, in view of all the evidence, the findings of the trial court had ample support.

A question also arose as to the admission of the field book of the surveyor Rice. He had deceased some time before this litigation began. It was not offered at the original hearing, but at a second hearing asked for by Jamac under V.R.C.P. 59. This rule relates to the granting of a new trial, or reopening the judgment and taking further evidence on a matter tried by court. The defendants Feuer objected to the additional evidence in that it did not, in their view, meet the test of newly discovered evidence.

Although we construe Rule 59 as having a somewhat broader scope than that test, which is more fittingly applied to V.R.C.P. 60, we do not accept the Jamac proposition that Rule 59 is a mere device for putting additional evidence before the trial court. Its purpose is, in line with most discretionary privileges of a trial court, directed at preventing a miscarriage of justice and allowing corrective action to that end to be taken promptly at the trial court level before review. Thus, the presentation of new evidence need not be

allowed the merely dilatory, and ought not to be allowed to the prejudice of another party.

At least two sufficient reasons appear in the record for supporting the trial court's ruling excluding the field book. The first is that David Feuer who actually negotiated the purchase of the parcel for Lake Tanners, Inc., and who walked the boundaries, knew the sketch and rejected the Rice survey earlier, died prior to the second hearing. The grantees then had no one who had been present to represent their interests.

Additionally, when the field book was offered, it was tendered on the basis that the information in it would correspond to the information appearing on the Rice survey, already on exhibit in the case. It literally would have added nothing new of substance to the case.

Thus, even though there might have been no error in receiving it, its belated production at the second hearing, in the light of the death of the only defendant with personal knowledge of the agreed-to bounds, together with its merely cumulative contribution to the evidence in the case, fully justified the exclusionary ruling of the court. No error appears.

*Judgment affirmed.*