**James and Madeline Withington v. Asa and Vivian Derrick**

[572 A.2d 912]

No. 87-410

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed February 9, 1990

*Black & Black,* White River Junction, for Plaintiffs-Appellants.

*Philip M. Johnson,* Taftsville, for Defendants-Appellees.

**Gibson, J.** Plaintiffs, the Withingtons, appeal from a Windsor Superior Court judgment holding that defendants, the Derricks, are the owners of a disputed piece of land located at the confluence of the parties' properties. We reverse, with directions to enter judgment in favor of plaintiffs.

## I.

This appeal concerns the location of the boundary line between the properties of two adjoining landowners in the Village of Wilder, Town of Hartford. On October 10, 1959, in two separate transactions, two brothers, as common grantors, deeded distinct pieces of property to plaintiffs and to defendants. Defendants' deed provides as follows:

> Being Lot #36 as delineated on Hazen's Survey and Plan of Lots in the Village of Wilder, so-called, and which lot is bounded on the East by Lot #29, now owned by the grantees herein; on the north by Lot #35, now owned by the Benedicts; on the west by land now of Hoff; and on the south by the street known as Chandler Terrace.

A sketch of the relevant portion of Hazen's 1887 Survey is provided along with the names of the landowners described in the parties' deeds. The phrase in defendants' deed describing the western boundary of the property is incorrect: there was no adjacent landowner by the name of Hoff. At the time of the conveyance, people named Haff did own several lots about a block away. Even assuming that the drafter of the instrument was referring to Haff, the Haff property could not possibly have been the western boundary of lot #36.

Plaintiffs' deed, granted on the same day by the same grantors, includes the following description:

> Also an irregular parcel of land described as follows: Beginning at a point marking the southeasterly corner of the Haff premises, and thence proceeding northerly along said

Haff premises to the corner of Fern Street; thence easterly along Fern Street to the Benedict premises; thence following the boundaries of the Benedict premises and St. John premises and the boundary of the right of way to said premises to Lot #36; thence southerly along the westerly boundary of Lot #36 to Chandler Terrace; thence westerly along the southerly boundary of the premises herein conveyed to the corner of Lot #44 which is the point of beginning.

This deed description raises two questions. First, the Benedict and St. John deeds do not mention any right of way leading to or adjoining their land; however, it is uncontested that a narrow strip of land on the southerly end of the St. John premises separately existed as a right of way. Second, the last part of the description does not close the deeded property. We also note that Fern Street and Union Street were never accepted as municipal roadways.

After examining the various deeds surrounding the disputed property, the trial court propounded the theory that the grantors had intended to deed to defendants the portion of the never-accepted Union Street directly west of lot #36, but that the drawer of defendants' deed had mistaken lot #44 for lot #37, and accordingly named the Hoff (meant to be Haff) property as the western boundary of lot #36. The court admits that this theory appears to make "whole cloth" out of nothing, but advances it nonetheless based on the following facts and conjecture: (1) the grantors, in attempting to describe lot #36 as including the adjoining portion of Union Street, confused lot #44 with lot #37 because #44 is located parallel to lot #37 just one block further west; (2) the part of Pine Street east of lot #44 and south of Fern Street was not conveyed to plaintiffs due to the erroneous assumption that it had been conveyed to defendants, when in fact the grantors had intended to convey the parallel portion of Union Street to defendants; and (3) this theory would explain why plaintiffs' deed description does not close the lot deeded to plaintiffs. In addition, the court concluded that defendants had used the land from 1959 to 1981 in such a manner as to acquire it by adverse possession.

On appeal, plaintiffs contend that the court erred in that (1) the court's theory was not supported by the evidence and therefore is clearly erroneous, and (2) adverse possession was never an issue in the case.

## II.

Plaintiffs contest the trial court's theory that the grantors considered lot #36 to include the portion of Union Street directly west of it and that the drawer of the deed had attempted to indicate this but confused Union Street with Pine Street. We agree with plaintiffs that there is absolutely no direct evidence to support this theory, and that the theory is too attenuated and speculative to merit the deference we normally give to trial court findings. See *Monet v. Merritt*, 136 Vt. 261, 265, 388 A.2d 366, 368 (1978) (trial court's findings of fact on location of boundary line not to be overturned unless clearly erroneous).

Essentially, only two facts vaguely support the trial court's theory. First, since Union Street was not really a street at the time of the deed, one might infer that the grantors intended lot #36 to include the parcel of land adjoining lot #36 inaccurately marked as a street. Nonetheless, in addition to the fact that this is purely conjecture, we note that the same grantors had granted land in prior deeds (the Benedict and St. John properties) which adjoined, but did not include, Union Street. Thus, there is no reason to assume that Union Street would normally be considered part of one of its adjoining lots simply because it had never been accepted as a street.

Second, the trial court's theory, though attenuated, does provide an explanation of why the description in plaintiffs' deed does not close their property. Nevertheless, since the boundary of the "closing" segment of plaintiffs' land is not in dispute, the fact that plaintiffs' deed description does not close is of little consequence. Where there are several manifest errors and the proffered interpretation hinges on nothing more than speculation, that interpretation cannot prevail without first applying the established rules of construction to determine the intent of the parties. See *Monet*, 136 Vt. at 264, 388 A.2d at 368.

■■ "In construing a deed, we initially look at the instrument itself, which is deemed to declare the understanding and intent of the parties." *Merritt v. Merritt*, 146 Vt. 246, 250, 500 A.2d 534, 537 (1985). Thus, it is the intention expressed by the words of the deed, not the unexpressed intention that the parties may have had, which prevails. *Reeves v. Towery*, 621 S.W.2d 209, 212 (Tex. Ct. App. 1981); see *Downer v. Gourlay*, 133 Vt. 544, 546, 349 A.2d 707, 708 (1975) ("understanding of parties must be . . . that which their own instrument declares"). Generally, a particular description will govern over a general description, see, e.g., *Spooner v. Menard*, 124 Vt. 61, 63, 196 A.2d 510, 512 (1963), but less significant aspects of a description will "become[] the controlling influence in determining the identity of premises where other parts of [the] description are not sufficiently certain," *Downer*, 133 Vt. at 547, 349 A.2d at 709, or are nonexistent. For instance, in *Spiller v. Scribner*, 36 Vt. 245 (1863), where the deed described land as "being lots No. 22 and 23" and as "our home farm," this Court held that the disputed land, which was inside the home farm but outside lots No. 22 and 23, was not part of the deeded land because "land conveyed . . . by clear and well defined metes and bounds . . . shall prevail . . . over any general words of description that may have been used in the deed." *Id.* at 246. The Court pointed out that an additional, more particular description could have overridden the reference to specific lot numbers, but that

> the description of a lot by reference to its number[] is a description in its legal effect according to the lines of such lot as surveyed and established in the original division of town, and is just as definite, although not so particular, as it would be if the lines were given, and should receive the same construction and have the same legal effect, in one case as the other, and such description in this case must be the controlling description, and determine the extent of the land conveyed.

*Id.* at 247.

■ In the instant case, the descriptions referring to the land of adjoining property owners are particular descriptions, see *Monet*, 136 Vt. at 264, 388 A.2d at 368 ("A reference to an estab-

lished property line in a deed description establishes that property as a monument."); however, "[w]here maps are referred to in a conveyance, they are regarded as incorporated into the instrument and given considerable weight in determining the true description of the land." *Pennsylvania Game Comm'n v. Keown*, 80 Pa. Commw. 471, 474, 471 A.2d 937, 939–40 (1984); see *Duchesnaye v. Silva*, 118 N.H. 728, 732, 394 A.2d 59, 61 (1978); *Hammond v. Lindsay*, 277 S.C. 182, 184, 284 S.E.2d 581, 582 (1981). Further, "[w]here an ambiguity or error exists with regard to the description in a deed, an attached map or survey relating to the ambiguity or error will control." *Eves v. Morgan City Fund*, 252 So. 2d 770, 775 (La. App. 1971); see *Williams v. Skyline Dev. Corp.*, 265 Md. 130, 161, 288 A.2d 333, 351 (1972). Accordingly, in *Mazzucco v. Eastman*, 36 Misc. 2d 648, 650, 236 N.Y.S.2d 986, 988 (Sup. Ct. 1960), *aff'd*, 17 A.D.2d 889, 239 N.Y.S.2d 535 (1962), the court awarded disputed land described both by lot number and by metes and bounds to the party claiming the priority of the lot description, stating

> when there is a conflict between a specific description by metes and bounds and a lot as shown upon a map by which a tract of land is conveyed, the latter provision will control. When in a deed the lot intended to be conveyed is properly designated by its number on a recorded plot, but the deed, in attempting to give a more particular description, incorrectly or inaccurately sets forth the dimensions of the same, such designation by lot number will prevail over such other description in the deed.

■ In the instant case, defendants' deed unambiguously describes their property as "[b]eing Lot 36 as delineated on Hazen's Survey and Plan of Lots in the Village of Wilder," and plaintiffs' deed unambiguously describes the disputed property line as continuing "southerly along the westerly boundary of Lot # 36." In contrast, the more detailed description of the disputed boundary line in defendants' deed is incorrect and ambiguous. Consequently, the unambiguous description by lot number should prevail over the erroneous reference to an adjoining property owner. The trial court's theory, created in an attempt to reconcile the ambiguities and inaccuracies in the

deeds' descriptions, is not supported by any evidence in the record and cannot supplant the plain meaning of the lot descriptions in the deeds.

## III.

Plaintiffs next attack the trial court's finding that defendants acquired the disputed land by adverse possession, arguing that adverse possession was never an issue in the case and that, in any event, the record does not support a finding of adverse possession. We agree that adverse possession was never an issue at trial.

Generally, an affirmative defense must be raised in the pleadings, V.R.C.P. 8(c); otherwise, it is usually not available at trial or on appeal. *Brouha v. Postman,* 145 Vt. 449, 452, 491 A.2d 1038, 1040 (1985); *State Highway Board v. Jamac Corp.,* 131 Vt. 510, 513, 310 A.2d 120, 122 (1973). V.R.C.P. 15(a) does provide, however, that leave to amend the pleadings "shall be freely given," and V.R.C.P. 15(b) allows issues raised at trial *without objection* to be treated as if they were raised in the pleadings. See *Cleverly v. Cleverly,* 147 Vt. 154, 157, 513 A.2d 612, 614 (1986); *Concra Corp. v. Andrus,* 141 Vt. 169, 172, 446 A.2d 363, 364 (1982). If a party attempts to introduce evidence at trial regarding an issue not addressed in the pleadings, and the opposing party objects, the party seeking to admit the evidence must move for an amendment of the pleadings. *Hodgdon v. Stockwell,* 138 Vt. 473, 474, 417 A.2d 931, 932 (1980).

In the instant case, defendants never raised the issue of adverse possession as an affirmative defense or as a counterclaim. Furthermore, when defendants impliedly addressed the issue during cross-examination of one of the plaintiffs, plaintiffs objected on two separate occasions, the court sustained the objection both times, and defendants never sought to amend their pleadings or pursue the issue further. Under these circumstances, we will not consider the issue on appeal.

*Reversed and remanded with directions to enter judgment in favor of plaintiffs.*