In re Petition of Waitsfield-Fayston Telephone Co., Inc. (2005-498)

2007 VT 55

[Filed 29-Jun-2007]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 55

 No. 2005-498


 In re Petition of Waitsfield-Fayston Supreme Court
 TelephoneCompany, Inc., d/b/a Waitsfield 
 Telecom, d/b/a Waitsfield Cable and On Appeal from 
 d/b/a Champlain Valley Telecom, 
 to Establish a Rate for Rental of Space
 on Poles Owned by Green Mountain Power 
 Corporation Public Service Board

 September Term, 2006


 Michael H. Dworkin, Chair

 Harriet Ann King of King & King, Waitsfield, for Appellant Green Mountain
 Power Corporation

 Paul J. Phillips of Primmer Piper Eggleston & Cramer PC, St. Johnsbury, for
 Appellee Waitsfield-Fayston Telephone Company, Inc.

 John J. Cotter, Montpelier, for Appellee Department of Public Service.


 PRESENT: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and 
 Crawford, Supr. J., Specially Assigned

 
 ¶ 1. DOOLEY, J. Appellant Green Mountain Power Corporation (GMP)
 appeals a Public Service Board order requiring GMP to refund to appellee
 Waitsfield-Fayston Telephone Company, Inc. (WFTC) "make-ready" charges paid
 by WFTC over a period of years. The charges, which were separate from
 annual rental charges, were for making ready poles owned by GMP to accept
 telephone lines in addition to the electric lines already on them. GMP
 raises a host of arguments against the make-ready refund, including that it
 was time-barred and that GMP lacked sufficient notice that the make-ready
 charge issue was in the case before the Board. We agree that no claim for
 the refund of make-ready charges was properly in the case and therefore
 reverse.
 
 ¶ 2. WFTC is a Vermont corporation that provides telephone and cable
 television services that are regulated by the Board. GMP is an electric
 utility provider whose services are also regulated by the Board. GMP owns
 electricity distribution poles to which WFTC sought to attach its telephone
 and cable television lines; thus, in 1983 the parties entered into a
 contract setting the annual rent WFTC would pay to share thousands of GMP
 poles. (FN1) The contract, by its terms, summarized the parties' agreement
 as to charges for poles. Apart from the contract price, GMP billed WFTC
 for make-ready charges for approximately twenty years. 
 
 ¶ 3. Years after the parties' contract, in 2001, the Board adopted
 revised Rule 3.7 governing pole attachment rates that a "pole-owning
 utility," such as GMP, may charge to an "attaching entity" such as WFTC. 
 Public Service Board Rule 3.702(B), (F). In light of the lower rates
 generally provided for in the rule, WFTC terminated the contract with GMP
 in February 2003 and, in December 2003, petitioned the Board to set new
 rates pursuant to Rule 3.7. At the time of WFTC's petition, GMP charged
 WFTC $35.19 per pole in annual rent for approximately 3900 poles, and
 $25.13 per pole for approximately 4300 poles. (FN2) The $35.19 rate was
 the highest pole rental rate GMP charged to any "attaching entity" in the
 state.
 
 ¶ 4. WFTC's 2003 petition was not the first time the parties brought
 a rate dispute to the Board. In 1997, CVT, which subsequently merged into
 WFTC, similarly challenged GMP's pole attachment charges in Board Docket
 No. 5960. The parties to Docket No. 5960 entered into a stipulation for
 pole attachment rates for 1994 through 1997. Ultimately, due to
 uncertainty while the Board developed its rule on pole attachments, the
 parties continued the effectiveness of the stipulation indefinitely pending
 adoption of the new rule.

 ¶ 5. The 2003 WFTC petition asked the Board to set annual pole
 rental rates pursuant to Rule 3.7, and to order a refund of WFTC's
 overpayment since January 1, 2002 - the effective date of rates set by the
 new rule. Public Service Board Rule 3.711. As to the refund specifically,
 WFTC asked the Board to order a reimbursement of its "overpayment of pole
 rental charges" from January 1, 2002 to December 30, 2003. The petition
 never mentioned make-ready charges and sought no relief with respect to
 them, apparently because the new rule specifically provided for make-ready
 charges and established the basis for calculating them. See Public Service
 Board Rule 3.708(G). 
 
 ¶ 6. Following prefiled testimony and an evidentiary hearing, the
 hearing officer granted WFTC's request and recommended an annual rate of
 $16.00 per pole, but generally rejected WFTC's request for overpayments
 going back to 2002. (FN3) He also found that because the parties' contract
 was "intended to include all the costs of pole attachments, including
 make-ready costs," GMP should return to WFTC all make-ready payments
 pre-dating January 1, 2002, and he gave WFTC an opportunity to make an
 additional filing showing that amount.
 
 ¶ 7. WFTC made the additional filing to capture the make-ready
 charge refund, but it could find records of these payments only going back
 to 1992. It proposed a make-ready reimbursement figure of $386,984.10,
 which the hearing officer adopted. The Board affirmed the hearing
 officer's recommendations and ordered the refund, including the refund of
 the make-ready costs. 

 ¶ 8. On appeal, GMP contests only the make-ready charge refund
 order, raising ten separate arguments against this part of the Board's
 order. Because one of GMP's claims resolves this appeal, we address it
 alone. 

 ¶ 9. GMP's ninth and most troubling argument is that the Board did
 not provide GMP sufficient notice of the make-ready refund. Here, GMP
 claims that the Board's order violated its constitutional right to
 procedural due process, as well as its right against governmental takings,
 and violated a provision of Vermont's Administrative Procedure Act, which
 requires parties to a contested case to be given the opportunity "to
 respond and present evidence and argument on all issues." 3 V.S.A. §
 809(c). We look to the statutory argument first. Ashwander v. Tennessee
 Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a
 case can be decided on either of two grounds, one involving a
 constitutional question, the other a question of statutory construction or
 general law, the Court will decide only the latter."). 
 
 ¶ 10. In reviewing the adequacy of notice pursuant to 3 V.S.A. §
 809(c), "we must examine whether or not the parties were given an adequate
 opportunity to prepare and respond to the issues raised in the proceeding." 
 Petition of Twenty Four Vermont Utils., 159 Vt. 363, 369, 618 A.2d 1309,
 1312-13 (1992) (quotation and citation omitted). In implementing the
 command of the statute, the Board has, at least in part, adopted the
 Vermont Rules of Civil Procedure subject to modification where statute or
 specific Board rules provide. Petition of Twenty-Four Vermont Utils., 159
 Vt. 339, 356, 618 A.2d 1295, 1305 (1992); Vermont Public Service Board
 Rules 2.103, 2.105.


 ¶ 11. Our analysis begins, as this case did, with WFTC's petition. 
 The term "make-ready" does not appear. WFTC's petition asked the Board to:
 (1) set a rental rate pursuant to revised Rule 3.7, and (2) "require GMP to
 Refund Overpayments of Pole Rental Charges Made by WFTC." Specifically,
 WFTC sought overpayment refunds from pole rental charges paid during the
 period from January 1, 2002 to December 31, 2003. 

 ¶ 12. Vermont Rule of Civil Procedure 8(a) requires that a complaint
 contain a statement of each claim. A pleading is sufficient under the rule
 if it gives " 'fair notice of the claim and the grounds upon which it
 rests.' " Limoge v. People's Trust Co., 168 Vt. 265, 274, 719 A.2d 888,
 893 (1998) (quoting Molleur v. Leriche, 142 Vt. 620, 622, 458 A.2d 1139,
 1140 (1983)). Failure to plead a claim means that the claim is not in the
 case, and the court may not grant relief on it unless the claim
 subsequently comes before the court. See Molleur, 142 Vt. at 622, 458 A.2d
 at 1140. 

 ¶ 13. A claim may be added by amendment of the complaint. V.R.C.P.
 15(a). Pursuant to Rule 15(b), a claim may enter the case without formal
 amendment:

 (b) Amendments to Conform to the Evidence. When issues not
 raised by the pleadings are tried by express or implied consent of
 the parties, they shall be treated in all respects as if they had
 been raised in the pleadings. Such amendment of the pleadings as
 may be necessary to cause them to conform to the evidence and to
 raise these issues may be made upon motion of any party at any
 time, even after judgment; but failure so to amend does not affect
 the result of the trial of these issues. If evidence is objected
 to at the trial on the ground that it is not within the issues
 made by the pleadings, the court may allow the pleadings to be
 amended and shall do so freely when the presentation of the merits
 of the action will be subserved thereby and the objecting party
 fails to satisfy the court that the admission of such evidence
 would prejudice the party in maintaining the party's action or
 defense upon the merits. The court may grant a continuance to
 enable the objecting party to meet such evidence.

 V.R.C.P. 15(b). The Board has specifically held that Rule 15(b) applies to
 its proceedings. Petition of Dep't of Pub. Serv., No. 7195, Order re:
 Motion to Alter or Amend at 4 n.3 (Dec. 8, 2006). Under the terms of the
 rule, we take the Board's decision in this case as a ruling that the issue
 of refunding make-ready charges entered the proceeding either with GMP's
 implied consent or over its objection because it was not prejudiced. In
 that light, we examine more closely the proceedings after the filing of the
 petition.

 ¶ 14. The first reference to make-ready charges occurred during the
 cross-examination of one of GMP's witnesses, through whom WFTC's counsel
 sought to admit two letters dealing with make-ready charges. Counsel for
 GMP objected to the admission of the letters, stating: "[a]s I understand
 [WFTC's] petition in this proceeding it is not related to make-ready
 charges. It simply requests the Board to set the rate for the annual
 rental charge for attachments to GMP's poles." Counsel for GMP continued:
 "[i]f there is another issue relating to make-ready, finding out about it
 at the technical hearing doesn't seem to be conducive to an efficient
 resolution of this dispute." Counsel for WFTC responded that "the only
 issue relative to make-ready does not concern the amount of the charges or
 the rates that are charged, but simply concerns the terms and conditions
 under which [GMP] provides pole attachment services to [WFTC] . . . and I'm
 simply trying to establish that [GMP] in fact does charge make-ready
 charges to [WFTC]." (Emphasis added.) Later, counsel for WFTC stated
 that, with respect to the make-ready letters, he was "not trying to prove
 that the rates [were] exorbitant or [that] they [were] deficient in any []
 way," rather, he was "just trying to show there [were] rates." (Emphasis
 added.) 
 
 ¶ 15. This exchange led to a broader discussion of the issue of
 make-ready charges - specifically, whether those charges were included
 within the terms of the original contract. Counsel for GMP persisted in
 questioning the relevance of the make-ready charge letters due "to the fact
 that [WFTC's] petition . . . never mention[ed] make-ready charges. It
 merely ask[ed] this Board . . . to establish a pole rental." At this point
 counsel for WFTC explained to the officer that "the [contract] rates that
 are being charged, which are at issue here, were intended to cover all pole
 costs." Counsel for GMP urged that "there [had] been no testimony on the
 part of [WFTC] or GMP on make-ready charges." 

 ¶ 16. Ultimately, the hearing officer overruled GMP's objection to
 the letters. Later in the hearing, counsel for GMP recalled WFTC's witness
 "to respond to [the officer's] questions with respect to the charges for
 make-ready." This cross-examination, and the follow-up by counsel for
 WFTC, produced the evidence on which the hearing officer ordered a refund
 of all make-ready charges paid to GMP by WFTC. The evidence, and the
 arguments of the parties, however, did not change the rationale under which
 WFTC introduced the subject of make-ready charges. WFTC made no claim for
 reimbursement of make-ready charges.
 
 ¶ 17. Following the hearing, WFTC submitted a brief and proposal for
 decision. The proposal for decision proposed findings with respect to
 make-ready charges, but reiterated WFTC's claims for relief, without adding
 any relief with respect to make-ready charges. (FN4) To the extent WFTC
 proposed that the make-ready findings were relevant to the decision, it was
 that they supported WFTC's entitlement to a partial refund of pole rental
 charges retroactive to January 1, 2002, the effective date of the new Board
 rules. WFTC did not seek any refund of make-ready charges, even those
 incurred from January 1, 2002 - its proposed retroactivity date - to the
 date of the order. In a reply to WFTC's proposal, GMP argued that the fact
 that it imposed make-ready charges did not support making a new rental rate
 retroactive.

 ¶ 18. As set out above in the summary of proceedings, the hearing
 officer proposed a decision that included an order to refund make-ready
 charges. He stated:

 I also accept WFTC's argument that the contract with GMP was
 intended to include all the costs of pole attachments, including
 make-ready costs, and I conclude that GMP ought to be required to
 return these payments. It is unfortunate that WFTC did not
 include any information about the exact amount of the payments it
 made under protest, other than to describe them as "hundreds of
 thousands of dollars." However, this information should be
 available to both companies, and the Board can require this
 calculation after the issuance of the final order.

 GMP objected to the proposed order, making, in summary form, much of the
 argument it makes here. (FN5) The hearing officer responded in part that
 "resolution of the make-ready issue is closely tied to the pole attachment
 rate issue, and its resolution is a reasonable, ancillary, extension of the
 rate issue." The Board initially accepted the hearing officer's proposed
 decision without mentioning most of GMP's objections. (FN6) In response to
 GMP's motion for reconsideration, the Board rejected GMP's request to allow
 it to submit evidence on the make-ready charge issue. In response to GMP's
 procedural argument, the Board explained:

 An argument that GMP has emphasized is that the issue of makeready
 charges only arose at [the] hearing, and that it had no
 opportunity to present evidence for its own side. However, GMP
 made no request for a continuance nor for an opportunity to
 present evidence on this issue, either at hearing or subsequently. 
 GMP cannot now complain about a lack of opportunity to be heard.

 ¶ 19. Returning to Rule 15(b), we cannot conclude that the issue of
 make-ready charges entered the case by the first alternative method - GMP's
 implied consent. In order to find consent for an unpleaded issue, "it must
 appear that the [injured] party understood that evidence was introduced to
 prove the unpleaded issue." Vineyard Brands, Inc. v. Oak Knoll Cellar, 155
 Vt. 473, 485, 587 A.2d 77, 83-84 (1990) (quotation and citation omitted). 
 Applying the identical federal rule, Wright and Miller speak to this issue
 in exactly the context that was before the hearing officer:

 Furthermore, when the evidence that is claimed to show that an
 issue was tried by consent is relevant to an issue already in the
 case, as well as to the one that is the subject matter of the
 amendment, and there was no indication at trial that the party who
 introduced the evidence was seeking to raise a new issue, the
 pleadings will not be deemed amended under the first portion of
 Rule 15(b). The reasoning behind this view is sound since if
 evidence is introduced to support basic issues that already have
 been pleaded, the opposing party may not be conscious of its
 relevance to issues not raised by the pleadings unless that fact
 is made clear.
 
 6A C.Wright, A.Miller & M.Kane, Federal Practice and Procedure § 1493, at
 32-34 (2d ed. 1990). Here, there was no indication at trial that WFTC was
 seeking to raise a new issue because its counsel explicitly and
 specifically said that he was not raising the unpleaded issue of the
 illegality of GMP's action in collecting make-ready charges. Even when the
 more detailed evidence about make-ready charges entered the case, WFTC did
 not suggest that it supported a new claim for a refund. Further, in its
 written filing after the hearing, WFTC proposed findings on make-ready
 charges but only in support of its preexisting claim for a retroactive
 partial refund of pole rental charges going back only to January 1, 2002. 
 The pole rental charges to be refunded did not include make-ready charges. 
 See Wilk Paving, Inc. v. Southworth-Milton, Inc., 162 Vt. 552, 558, 649
 A.2d 778, 783 (1994) (where defendant failed to raise affirmative defense
 in pleadings, trial briefs, and requests for findings and proposed
 conclusions of law, trial court properly denied a post-judgment motion
 under V.R.C.P. 15(b) to allow defendant to amend its answer to raise the
 defense).

 ¶ 20. By its reference to GMP's failure to seek a continuance,
 the Board apparently concluded that the legality of the make-ready charges
 was in the case under the third sentence of Rule 15(b) and not because GMP
 had impliedly consented to litigating the issue. Although the third
 sentence allows the Board to consider an issue over the objection of the
 opposing party in certain circumstances, it requires the pleadings to be
 amended. See V.R.C.P. 15(b). Thus, we have held in similar circumstances
 under Rule 15(b) that "the party seeking to admit the evidence must move
 for an amendment of the pleadings." Withington v. Derrick, 153 Vt. 598,
 605, 572 A.2d 912, 915 (1990). The point of the amendment is to make clear
 to the opposing party that the new claim is in the case and must be
 defended against. Thus, the need for the amendment is present "even where
 there is evidence in the record, introduced as relevant to some other
 issue, which could support the amendment." Desrochers v. Perrault, 148 Vt.
 491, 494, 535 A.2d 334, 336 (1987).

 ¶ 21. In this case, WFTC never moved to amend its petition, and
 disavowed that the issue of the legality of make-ready charges was in the
 case. In these circumstances, there was no obligation on GMP to move for a
 continuance. The third sentence of the rule does not authorize
 consideration of the legality of make-ready charges in this case.
 
 ¶ 22. We recognize that Board orders generally enjoy a strong
 presumption of validity, especially where the Board has employed its
 "particular expertise" in reaching its conclusion. In re Proposed Sale of
 Vermont Yankee Nuclear Power Station, 2003 VT 53, ¶ 5, 175 Vt. 368, 829
 A.2d 1284. The issue before us, however, is one of procedure that does not
 involve the Board's special expertise. When such issues arise in the trial
 courts, we review them for abuse of discretion. Wilk Paving, 162 Vt. at
 558, 649 A.2d at 783. We believe that this standard of review is
 appropriate for Board procedural orders of this type.

 ¶ 23. Even accounting for the discretion of the Board, we conclude
 that its consideration of the legality of the make-ready charges under
 these circumstances was improper. WFTC did not raise the make-ready charge
 issue, despite numerous opportunities to do so. Indeed, it clearly stated
 that it was not claiming that the make-ready charges were illegal and it
 was not seeking a refund on that basis. Thus, the hearing officer raised
 the make-ready charge refund issue sua sponte, with no warning to GMP and
 no opportunity for GMP to respond to it. 
 
 ¶ 24. The cases arising under the identical federal rule, F.R.C.P.
 15(b), indicate two possible remedies for a violation. In some cases, the
 decisions have held that an unpleaded issue that is improperly introduced
 into the case under Rule 15(b) cannot be considered. E.g., Prieto v. Paul
 Revere Life Ins. Co., 354 F.3d 1005, 1013 (9th Cir. 2004) (reversing trial
 court's sua sponte determination of issue for defendant, contrary to
 F.R.C.P. 15(b), and remanding with directions to award judgment for
 plaintiff). In others, the decisions have allowed the unpleaded claim, but
 have remanded the case to give the appealing party an opportunity to
 respond to it. E.g., MBI Motor Co. v. Lotus/East, Inc., 506 F.2d 709, 713
 (6th Cir. 1974) (remanding to district court to reopen case and allow
 submission of evidence on issue determined by court in violation of
 F.R.C.P. 15(b)). We conclude that the proper remedy in this case, under
 our precedents, is the former. In Desrochers, the defendant sought to
 amend the answer to assert a counterclaim after the close of the evidence,
 asserting that the admitted evidence supported the counterclaim. 148 Vt.
 at 493, 535 A.2d at 336. We noted that the plaintiff had objected to the
 evidence in support of the unpleaded counterclaim, and the issue was not
 tried by express or implied consent. Id. We held that the court was
 correct in denying the counterclaim: "[A] post-judgment amendment which
 brings in an entirely extrinsic theory, or changes the theory on which the
 case was actually tried, is not permissible." Id. at 494, 535 A.2d at 336. 
 In essence, the hearing officer here did exactly what we prohibited in
 Desrochers - he amended the petition to bring in a theory and claim
 extrinsic to those in the petition as pleaded. See also Withington, 153
 Vt. at 605, 572 A.2d at 915 (denying consideration on appeal of issue not
 covered by the pleadings, not tried by consent, and for which no motion to
 amend was filed). Similarly, in Molleur, the court submitted to the jury
 an unpleaded claim for quantum meruit. 142 Vt. at 622, 458 A.2d at 1140. 
 We held that the theory had not entered the case by the express or implied
 consent of the opposing party under Rule 15(b) and thus "was not an issue
 in the trial of the case." Id. On this basis, we reversed a jury verdict
 based on quantum meruit and entered judgment for defendant. Id. at 622-23,
 458 A.2d at 1140. 

 ¶ 25. Because the unpleaded claim for a refund of make-ready charges
 was not properly before the Board, we hold that the Board erred in
 considering the claim and ordering a refund of the make-ready charges. We
 reverse the Board's make-ready refund order on that basis, and thus do not
 reach the alternative grounds for reversal raised by GMP.

 Reversed. 


 FOR THE COURT:



 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes


FN1. There are actually two agreements. During the 1990's WFTC purchased
 Champlain Valley Telecom (CVT) from Continental Telephone Company of
 Vermont, Inc. (Continental), and CVT thereafter merged into WFTC. 
 Continental had entered into an agreement with GMP that is virtually
 identical to the 1983 WFTC agreement. Because the two agreements contain
 materially identical language, we refer to them jointly as "the contract." 
 We note, however, that CVT, before and after it merged with WFTC, sought
 relief from its contracts because it believed the rental rates were too
 high. Except with respect to the poles to which CVT lines were attached,
 WFTC did not seek relief until much later.

FN2. The difference reflects whether the poles are in the CVT service area
 or in the service area for the rest of WFTC. The CVT rate was $25.13 per
 pole per year, set in stipulations to temporarily settle CVT's challenge to
 GMP's rates in a Board proceeding. The rate for the rest of WFTC is $35.19
 per pole per year, set under the 1983 contract and its cost escalators.

FN3. The hearing officer required a refund of part of the amount paid for
 the CVT area poles because CVT had terminated its 1983 agreement and acted
 under the settlement stipulations. He denied any refund for the rest of
 WFTC's service area because WFTC did not terminate its contract with GMP
 until 2003. Thus, WFTC received a refund of more than $15,500 out of the
 nearly $82,000 it sought.

FN4. The relief sought was to set an annual rental rate at $14.18 per pole,
 make the rate effective on January 1, 2002, order GMP to refund rent
 overpayments from January 1, 2002, and order GMP to amend its existing pole
 attachment tariffs to give non-discriminatory access to all attaching
 entities.

FN5. GMP also made many of the same arguments in its response to WFTC's
 refund calculation filing.

FN6. GMP submitted to the Board comments on the hearing officer's final
 proposed decision, urging the Board not to accept the proposed decision and
 raising briefly the objections it had raised to the hearing officer.