## Wilk Paving, Inc. v. Southworth–Milton, Inc.

[649 A.2d 778]

No. 93-487

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed September 16, 1994

*Bernard J. Boudreau* of *Edward R. Seager, P.C.,* Rutland, for Plaintiff-Appellee.

*Frank E. Talbott* of *Wilson Powell Lang & Faris,* Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant Southworth-Milton, Inc., appeals from a judgment in favor of plaintiff, Wilk Paving, Inc., in the amount of the purchase price of an asphalt roller that plaintiff had purchased from defendant. After a bench trial, the court ruled that plaintiff was entitled to revoke acceptance and effectively had revoked acceptance under the Uniform Commercial Code (UCC), see 9A V.S.A. §§ 2-101 to 2-725 (Article 2, Sales). We affirm.

On October 10, 1989, plaintiff purchased the roller, relying in part on representations in a brochure provided by defendant that the machine was versatile, well-suited for plaintiff's typical paving jobs, reliable, and easy to maintain. As part of the purchase contract, defendant warranted repair and replacement of defective parts for one year and disclaimed all other warranties. On December 8, 1989, plaintiff discovered that the right rear vibratory motor was leaking oil and that the electrical system required repair. Plaintiff was advised to deliver the roller to defendant's place of business, and on December 18, 1989, the repair work was done to correct the foregoing problems. In addition, defendant replaced a blown fuse, tightened loose hydraulic lines that were leaking oil, resealed a hydraulic feedline to the vibratory motor, and gave the roller a general tune-up. Thereafter, plaintiff did not use the roller until the spring, when weather permitted resumption of paving projects.

On June 7, 1990, oil was observed to be leaking from the brake housing, requiring replacement of the housing and seals. On June 21,

1990, defendant found that the front drive motor was leaking oil from the parking brake piston. On June 29, 1990 the water pump seal was leaking and required disassembly, cleaning, and resealing. On August 16, 1990, the starter failed because of loose wiring in the principal wiring harness and starter. On August 28, 1990, the oil plug broke off, causing oil to leak over the surface of the pavement being applied. As a result, plaintiff had to replace the affected surface. All but the last of these problems were reported to defendant. Plaintiff also complained that the problems with the internal hydraulics made it difficult to drive the roller onto a trailer for transporting.

In September 1990, plaintiff's president informed defendant that he no longer wanted the machine and requested a return of the purchase price, less a reasonable rental fee for the time plaintiff used the roller during the summer. In November 1990, the roller was parked in plaintiff's lot and covered with a tarp. Examinations of the roller by experts in 1992 in preparation for trial disclosed that it was still leaking oil.

After trial, plaintiff was awarded the purchase price of the roller, but was denied recovery for consequential damages. Defendant then moved to alter or amend the judgment to provide defendant a setoff of the reasonable rental value of the roller. Defendant also moved to amend its answer to assert setoff as an affirmative defense. Both motions were denied.

On appeal, defendant contends that it was not afforded an opportunity to cure the roller's defects, that plaintiff failed to prove a nonconformity sufficient to create a right of revocation of acceptance, and that any such right to revoke was waived when plaintiff continued to use the roller. Defendant also challenges the trial court's ruling regarding the right to setoff. Plaintiff cross-appeals the denial of consequential damages.

On review, this Court will not disturb the trial court's findings of fact or conclusions of law unless the party challenging them demonstrates they are clearly erroneous. V.R.C.P. 52(a); *Estate of Sawyer v. Crowell*, 151 Vt. 287, 291, 559 A.2d 687, 690 (1989). Findings of fact will stand if supported by any reasonable and credible evidence, even if contrary evidence exists. *Community Feed Store v. Northeastern Culvert Corp.*, 151 Vt. 152, 155, 559 A.2d 1068, 1069 (1989).

## I.

### A.

■ Defendant first argues that plaintiff should be barred from any recovery for revoking acceptance without first giving defendant

an opportunity to cure defects in the roller. As a general rule, once a buyer accepts tender the buyer must, within a reasonable time after discovery of a breach, notify the seller of the breach or be barred from any remedy. 9A V.S.A. § 2-607(3)(a). This notice requirement affords a seller the opportunity to cure the claimed defects or minimize the buyer's losses. *Desilets Granite Co. v. Stone Equalizer Corp.*, 133 Vt. 372, 375, 340 A.2d 65, 67 (1975). The right to cure has limits, however: "[t]he buyer . . . is not bound to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." *Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So. 2d 319, 321 (Fla. Dist. Ct. App. 1972).

■ The record amply supports the trial court's conclusion that defendant had a reasonable opportunity to cure but failed to do so. The court's findings are based on evidence that a series of mechanical problems plagued the roller from the start of plaintiff's ownership. Almost without exception, plaintiff reported the problems to defendant, who, at various times over nine months, attempted repairs sufficient to keep the roller working as promised. Under the circumstances of this case, plaintiff afforded defendant adequate opportunity to make good on its representations before revoking acceptance.

### B.

Defendant next asserts that plaintiff failed to prove a nonconformity sufficient to create a right of revocation. Revocation of acceptance is governed by UCC § 2-608(1), which provides:

> The buyer may revoke his acceptance of a . . . commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> . . . .
>
> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

9A V.S.A. § 2-608(1).

■ ■ Defendant argues that the warranty was not breached because each oil leak was from a different seal, and defendant repaired or was prepared to repair all such leaks within the warranty period. The trial court took a broader view of the evidence, and concluded that defendant breached the express warranty that the

roller required only simple and light maintenance, was ideal for base surface application, and would perform exceptionally well on plaintiff's usual jobs. This conclusion is amply supported by the findings with respect to the deficiencies. A seller cannot bar revocation by repairing or agreeing to repair numerous defects; at some point a buyer may say "enough is enough" and revoke acceptance. *Rester v. Morrow*, 491 So. 2d 204, 210 (Miss. 1986). Defendant's argument that it never repaired or replaced the same part twice is not persuasive because the string of malfunctions substantially impaired the value of the roller. Moreover, the breakdowns undermined plaintiff's confidence in the ability of the machine to do the job. In light of these findings, the court reasonably concluded that the roller did not conform to defendant's warranties, notwithstanding defendant's repair efforts.

## C.

Defendant also contends that plaintiff waived any right to revoke acceptance by continuing to use the roller after giving notice of revocation. Defendant asserts that the trial court erred in finding that revocation occurred in November 1990, when the machine was parked, and in finding that the roller was used only once thereafter, inadvertently, by one of plaintiff's employees. According to defendant, plaintiff revoked acceptance in June 1990, when plaintiff's president telephoned the manufacturer and offered to pay a reasonable rental fee in exchange for a return of the roller. The record shows, however, that after additional repairs during the summer of 1990, this offer was communicated to the defendant on August 27, 1990. Plaintiff's president testified that he made the call "to see what they wanted to do for me." In late September, plaintiff's president just demanded the return of his money. The court found that defendant made repairs to the roller during the summer of 1990 and continued to assure plaintiff that the problems would be corrected up to and after revocation. In August 1990, plaintiff's mechanic replaced a broken oil plug, a burnt-out starter and wiring. Plaintiff's president testified that the roller was used on two subsequent jobs in October of that year.

A buyer who revokes acceptance has the same rights and duties with regard to the goods involved as if they had been rejected. 9A V.S.A. § 2-608(3). With limited exceptions, a buyer's exercise of ownership after rejection is wrongful as against the seller. *Id.* § 2-602(2)(a); see *id.* § 2-603(1) (buyer under duty to attempt to sell

rejected perishable goods on seller's account if seller has no agent or place of business at market of rejection), *id.* § 2-604 (if seller gives no instructions within reasonable time after buyer's rejection, buyer may store, reship, or sell on seller's account). Nevertheless, continued use of goods whose acceptance has been revoked does not vitiate the revocation if the use was reasonable. *McCullough v. Bill Swad Chrysler-Plymouth, Inc.*, 449 N.E.2d 1289, 1292 (Ohio 1983). Reasonable use is a question of fact that depends on whether: (1) the seller tendered instructions concerning return of the rejected goods upon notice of the revocation; (2) business needs or personal circumstances compelled the buyer's continued use; (3) the seller continued to offer assurances that the nonconformities would be cured or that the buyer would be recompensed for dissatisfaction and inconvenience during the period of continued use; (4) the seller acted in good faith; and (5) the seller suffered undue prejudice as a result of the continued use. *Id.* at 1293.

The court found that the continued use after revocation was a good faith attempt to mitigate damages, that defendant continued to assure plaintiff that repairs would be successful and that the use was reasonable under the circumstances. The record does not disclose any instructions by the defendant to plaintiff regarding permanent return of the roller, or evidence of prejudice from continued use. We agree with the trial court that the use of the roller during the month of October, after buyer had given notice, was not unreasonable. Therefore, plaintiff's post-revocation use did not waive the revocation of acceptance.

## II.

Finally, defendant contends it was entitled to a setoff against plaintiff's recovery in the amount of the reasonable value of plaintiff's use of the roller. Defendant did not request a setoff in its pleadings or at trial. Defendant maintains that the right to setoff need not be explicitly pled, because the notion of a setoff inheres in the common-law remedy of rescission imposed by the trial court. Setoff, however, is an affirmative defense that is waived if a party fails to plead it. *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 57, 539 A.2d 534, 536 (1987); see V.R.C.P. 8(c).

Alternatively, defendant contends that the trial court erred in denying its motion to amend its answer, under V.R.C.P. 15(b), to include the setoff defense. This motion was made almost four months

after the judgment for the plaintiff was entered. We review the court's resolution of this motion to amend for an abuse of discretion. *Brown v. Whitcomb*, 150 Vt. 106, 108–09, 550 A.2d 1, 3 (1988). Rule 15(b) provides in part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues.

V.R.C.P. 15(b). The trial court found, and the record bears out, that setoff was neither expressly nor impliedly tried because defendant failed to raise the issue in its pleadings, trial briefs, and requests for findings and proposed questions of law. Mere mention by defendant's counsel, after the close of evidence, of an intention to seek a setoff if plaintiff prevailed did not suffice to try the issue. Therefore, the trial court reasonably concluded that permitting amendment would be inappropriate, and it did not abuse its discretion in denying defendant's motion.

## III.

Plaintiff has cross-appealed the trial court's ruling that the contract effectively limited available remedies in the event of breach of warranty, precluding recovery of consequential damages. The relevant term provided that the seller would furnish only repair or replacement services on defective parts covered by the manufacturer's warranty, and that "under no circumstances shall seller or a manufacturer be held liable for any indirect, special, incidental or consequential damages to the purchaser." For the first time on appeal, plaintiff argues that the limitation of remedies is invalid under § 2-719(2)[*] because the limited remedy under the contract failed of its essential purpose. Since this issue was not raised before the trial court, it will not be considered. See *Lanphere v. Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

---

[*] "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." 9A V.S.A. § 2-719(2).

■ Plaintiff did argue, in essence, that the limitation of remedy was unconscionable and thereby unenforceable. Under 9A V.S.A. § 2-719(3), "[c]onsequential damages may be limited unless the limitation is unconscionable[;] . . . limitation of damages where the loss is commercial is not [prima facie unconscionable]."

> The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . *The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.*

9A V.S.A. § 2-302, Uniform Laws Comments No. 1 (citation omitted) (emphasis added).

■ At trial, plaintiff claimed that defendant failed to point out the warranty limitation, which appeared on the back of the sales contract form, and effectively took advantage of plaintiff's president's haste to close the deal on the day he signed the contract. In response, the court noted that the front page of the contract signed by both parties clearly stated, in large capital letters: "Additional terms and conditions on reverse side." Further, plaintiff did not assert fraud or misrepresentation in the making of the agreement, and when the deal was struck, both parties were commercial entities experienced in business matters. Plaintiff's lack of attention, alone, cannot justify dispensing with the unambiguous contractual limitation of remedy contained in the contract. See *Colgan v. Agway, Inc.*, 150 Vt. 373, 375, 553 A.2d 143, 145 (1988) (if language of contract is clear, terms must be taken to represent intention and understanding of parties). Absent a showing of unfair surprise or oppression, the disputed term cannot be invalidated as unconscionable, and the trial court correctly ruled the limitation enforceable.

*Affirmed.*