IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-60654
_____

DEERE & COMPANY,

Plaintiff - Counter Defendant - Appellee-Cross-Appellant,

versus

EDWARD JOHNSON, JR., doing business
as F & E Farms,

Defendant - Counter Claimant - Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Mississippi

_____
November 12, 2001

Before KING, Chief Judge, and JOLLY and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Deere financed a combine its dealer, Parker Tractor & Implement Company ("Parker"), sold to Johnson. Johnson was unhappy with the combine because it would not do the job. Deere was unhappy with Johnson because he failed to make any payments on the loan. Johnson wrote Deere a letter revoking acceptance of the combine. Deere refused to take it back. Johnson continued to use the combine. Deere finally sued Johnson to collect the unpaid balance on the loan. Johnson counter-claimed against Deere, as the manufacturer of the combine, for breach of implied and express warranties, breach of the implied warranty of fitness for a

particular purpose, and intentional misrepresentations. The jury returned a verdict that effectively awarded zero to both parties. The district court conformed the pleadings to the evidence and entered a quantum meruit award for Deere for the rental value of the combine while Johnson was using it.

Today's appeal addresses three issues: First, whether Johnson effectively revoked acceptance in the view of his continuing to assert ownership of the combine and failing to return it to Deere; second, whether the district court erred in conforming the pleadings to state a quantum meruit claim for Deere and awarding Deere a judgment on that basis; and finally, whether Deere presented sufficient evidence of the rental value of the combine. We hold that under the circumstances of this case, Johnson effectively revoked acceptance of the combine; that the district court erred in conforming the pleadings to state a quantum meruit claim and in entering a judgment for Deere; and that Deere presented evidence to support the jury's determination of the rental value of the combine. At the end of the day, this case is a "wash"--neither party receives anything. Accordingly, we reverse and remand for entry of a take-nothing judgment.

**I**

In 1994, Edward Johnson bought a combine from Parker, a retailer for Deere located in Tunica, Mississippi. Johnson made a down payment of $30,634.36. He financed the remainder of the

2

purchase price with Deere, using the combine as security for the loan.[1] The combine was a lemon. Throughout the harvest season of 1994, Johnson made service requests to Parker. Each time Parker sent its mechanic to Johnson's farm to repair the combine. Finally, on March 3, 1995, Johnson sent a letter to Deere, which revoked acceptance, tendered the combine, and asked for a replacement. In a letter dated May 12, 1995, Deere refused to take the combine back. It stated "Deere & Company certainly sees no reason to replace this combine and it is not willing to accept it back." Johnson continued to use the combine during the harvest season of 1995, as well as during the spring of 1996. After this lawsuit was initiated, Deere filed a replevin action, repossessed and sold the combine in July of 1997. Although Johnson used the

---

[1]In this case, a central issue -- which the parties pled, tried to the jury, retried in post-verdict motions, briefed, and orally argued on appeal -- is whether Johnson effectively revoked the sale contract for the combine. Johnson entered into this contract with Parker. We note, in passing, that there is nothing in the record that suggests (1) that Deere and Parker are one entity or (2) that Parker assigned Deere its rights under the sale contract.

Moreover, even if we assumed that Deere, not Parker, had all the rights under the sale contract, this fact would still fail to explain why the parties vigorously litigated the validity of the underlying sale contract in this action for collection on a loan contract. The loan contract and the sale contract are independent unless there is a contractual provision which states otherwise. Neither contract contains such a provision.

Undaunted, our analysis of the issues proceeds as tried to the jury and briefed on appeal; that is, we assume Deere (not Parker) was potentially entitled to the reasonable rental rate of the combine and that Johnson's revocation of the sale contract (if effective) would have nullified his obligations under the loan contract.

combine from 1994 until the spring of 1996, he made no payments on the loan contract.

## II

On September 26, 1995, Deere filed a complaint seeking to collect on the contract. Johnson counter-claimed. He alleged breach of contract, breach of express and implied warranties, breach of the implied warranty of fitness for a particular purpose, and intentional misrepresentations. Johnson sought lost profits, punitive and consequential damages. The jury found for Johnson on his breach of warranty claim and *against* Deere on its breach of contract claim. The jury awarded Johnson the down payment that he had made on the combine, $30,634.86, but subtracted $70,000 from this award for the fair rental value of the combine for the period of Johnson's use. This calculation was exactly what the verdict

form instructed the jury to do.[2]

Deere then filed a post-verdict motion that sought (a) judgment as a matter of law under Rule 50 or, alternatively, (b) the amendment of the pleadings to conform to the evidence presented under Rule 15(b); that is, to state a claim against Johnson in quantum meruit. Johnson filed his own post-verdict motion. He

---

[2]The verdict form completed by the jury reads as follows:

**VERDICT**

On Deere & Company's claim against Edward Johnson, Jr. for breach of the variable rate installment contract, we the jury find:

_____ For Deere & Company and award contract damages in favor of Deere and Company in the amount of $_____ Plus interest at a rate of $_____, per day from and after June 7, 2000.

___X___ For Edward Johnson, Jr.

On Edward Johnson's claim against Deere & Company for breach of warranty, express or implied, we the jury find:

___X___ For Edward Johnson, Jr. and award damages as follows:

$30,634.86 Down Payment

0 Interest on Down Payment

0 Incidental expenses incurred

LESS the fair rental value of the equipment for the period of use by Johnson in the amount of $70,000.

_____ For Deere & Company

6/09/00
Date

5

sought (a) judgment notwithstanding the verdict, asking the court to set aside the jury's determination of the rental value of the combine and award him the full down payment, or (b) an alteration or amendment of the judgment to that same effect, or (c) a new trial on damages only, and (d) attorney's fees.

In resolving this barrage of post-verdict motions, the district court denied Johnson's motions in all respects except as to prejudgment interest on the down payment, denied Deere's motion for judgment as a matter of law, and granted Deere's motion to amend the pleadings.

Based on the legal theory of quantum meruit -- raised for the first time in Deere's post-verdict 15(b) motion -- the district court amended the pleadings and entered an amended judgment for Deere. The amended judgment awarded Deere $70,000 minus Johnson's down payment and any prejudgment interest on that down payment. Notwithstanding that (1) the jury had found in favor of Johnson and against Deere, and (2) the district court had found against Deere as a matter of law on all of its asserted claims, Deere walked away from the district court with about $35,000.

Both parties now appeal.

### III

We first address Deere's appeal. Deere appeals the district court's denial of its motion for judgment as a matter of law with respect to its contract claim.

6

Deere moved for judgment as a matter of law twice -- once during trial and once in its post-verdict motion. Deere's argument is that it was entitled to collect on the loan contract for the combine because Johnson's continued use of the combine nullified his revocation of acceptance as a matter of law. The district court denied both motions. Deere only appeals the denial of the post-verdict motion. This ruling of the district court is to be distinguished from its ruling granting Deere's 15(b) motion, which we address later in this opinion.

We review the denial of a motion for judgment as a matter of law de novo. Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994).

It is not surprising that Mississippi law requires that buyers pay the contract price for any goods accepted, unless that acceptance is later effectively revoked. MISS. CODE ANN. §§ 75-2-607(1), 75-2-608 (1999). Deere argues that because Johnson failed to revoke his acceptance of the combine, he is bound by the contract, and thus the jury erred in awarding Johnson the return of his down payment. On appeal, the question is whether, viewing the evidence in the light most favorable to Johnson, a reasonable jury could have found that Johnson revoked acceptance of the combine. See Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969)(en banc) overruled on other grounds by Gautreux v. Scurlock Marine,Inc., 107 F.3d 331 (5th Cir. 1997)(en banc).

7

As we have noted, the Mississippi version of the UCC provides for the revocation of acceptance.[3] A buyer revoking acceptance of goods has the same duties as a buyer rejecting a shipment of goods; in most cases, a buyer must discontinue asserting any ownership over the goods.  MISS. CODE ANN. § 75-2-602(2)(a)(1999)("after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller").  It is undisputed that Johnson notified Deere of his revocation in a letter of March 3, 1995.  It is further undisputed that Johnson continued to use the combine after this letter of revocation.  Still further, Johnson generated a tax benefit for himself by claiming depreciation of the combine on his tax forms in both 1995 and 1996.  Without doubt, these two actions represent ownership

---

[3]The Mississippi Code states:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>> (a)  on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>> (b)  without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2)  Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the condition of the goods which is not caused by their defects. It is not effective until the buyer notifies the seller of it.
>
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

MISS. CODE. ANN. § 75-2-608 (1999).

activities by Johnson.  The question remains: Do these activities nullify Johnson's revocation of acceptance as a matter of law?

Mississippi courts have addressed this question in several cases.  In <u>North River Homes v. Bosarge</u>, 594 So.2d 1153 (Miss. 1992) the court addressed whether a family's failure to move out of a "lemon" mobile home waived their revocation of acceptance.  The court, in finding no waiver, reasoned that "[the family's] mistaken belief that North River would fulfill its assurances to repair the defects is but one reason why the Bosarges did not move out of their home.  Another reason is simple and [understandable]: When you tie up all your savings into purchasing a home, you cannot take it and park it somewhere.  [Y]ou have got to live in it until you get the people to clear your lot so you can put another [mobile home] on it."  <u>Id.</u>at 1160 (internal quotation marks omitted).

In a case involving a defective copier, however, the court held that the failure to return the copier did vitiate the revocation of acceptance.  Nevertheless, the court noted in dicta that this might not always be true.  <u>J.L. Teel Co., Inc. v. Houston United Sales, Inc.</u>, 491 So.2d 851, 859 (Miss. 1986)(stating "without doubt, failure to surrender the copier did not per se render ineffective Houston's revocation").[4]

---

[4]<u>Teel</u> went on to hold that the seller was entitled, under the theory of quantum meruit, to the reasonable rental rate for the copier.  <u>Id.</u> at 860. Deere primarily relies on <u>Teel</u> to support its quantum meruit claim. We do not disagree that Deere could have alleged a colorable claim based on quantum meruit, had it done so in a timely and proper way.  The fact that Deere could have made

Other states agree that continued use of non-conforming goods does not, in all cases, waive the revocation of acceptance. See Wilk Paving, Inc. v. Southworth-Milton, Inc., 649 A.2d 778, 781-82 (Vt. 1994)(failure to return defective asphalt roller does not forfeit the revocation of acceptance); McCullough v. Bill Swad Chrysler-Plymouth, Inc., 449 N.E.2d 1289, 1291 (Ohio 1983) (failure to return automobile did not forfeit revocation); Aubrey's R.V. Center, Inc. v. Tandy Corp., 731 P.2d 1124, 1129 (Wash.App.Ct. 1987)(failure to return software did not forfeit revocation).

Allowing continued use of the good is not the general rule, however. Typically, the law requires that a buyer return a non-conforming good, purchase a replacement, if necessary, and then sue for breach. MISS. CODE ANN. §§ 75-2-602, 75-2-714 (1999). The rationale is that even non-conforming goods have value, and by requiring a prompt return of the goods, the law enables a seller to resell the goods before they substantially depreciate in value. As the Mississippi Supreme Court has noted, however, a buyer, with no ability to replace the defective good, suffers substantial injury if forced to cede ownership of that good. The law thus weighs the two effects; that is, where the cost of replacement is low, the injury to the seller from the depreciation of the good outweighs the injury to the buyer that results from surrendering ownership. Thus, in such a situation the law requires the return of the non-

the quantum meruit claim, however, is irrelevant to whether Johnson revoked acceptance.

conforming good. On the other hand, when the cost of replacement is high, the injury resulting to the buyer from returning the good outweighs the seller's injury of depreciation; hence, in this situation the cases do not penalize the buyer when he reasonably retains the non-conforming good.

As we have noted, Mississippi case law employs this principle. In North Rivers Homes, the cost to the family of giving up the trailer was high. Hence, the court held that the failure to "move-out" did not waive revocation. On the other hand, in the Teel case, the company easily could have purchased another copier, and hence, the court held that the failure to surrender the copier nullified the attempt to revoke acceptance of the copier.

Here, the evidence shows that Johnson's cost of replacement was high. Johnson's credit was adversely affected when he failed to make payments on the loan for the combine. The record reflects that Johnson was operating close to the margin; he admittedly could not make but a few of the payments. It is unlikely that any combine dealer would have either rented or sold to Johnson under these circumstances. Without a combine, Johnson's ability to farm would be severely impaired. With little farm production, he could not mitigate the damages he suffered as a result of the defective combine. Thus, as with the mobile home owners in North River Homes, the record demonstrates that the damage to Johnson from ceding ownership of the combine would have been high.

11

Deere also maintains that Johnson continued to use the combine, which naturally caused depreciation, and that this change of the good rendered his revocation of acceptance ineffective. Other than depreciation, Deere does not allege that Johnson damaged the combine. Deere bases its depreciation-as-change argument on the language of the statute: "[R]evocation must occur within a reasonable time ... and before any substantial change in the condition of the goods not caused by their defects." MISS. CODE ANN. § 75-2-608(2) (1999). Deere cites no cases in which depreciation by itself was deemed a substantial change under this section of the Mississippi UCC. It seems that in almost all cases involving a "substantial change" the buyer engaged in some activity which altered the goods. See Intervale Steel Corp. v. Borg & Beck Div., Borg-Warner Corp., 578 F.Supp. 1081 (E.D.Mich. 1984)(buyer broke up goods into parts), aff'd, 762 F.2d 1998 (6th Cir 1985); Trinkle v. Schumacher Co., 301 N.W.2d 255 (Wis.Ct.App. 1980)(buyer cut fabric); Toyomenka (America), Inc. v. Combined Metals Corp., 487 N.E.2d 1172 (Ill.App.Ct. 1985)(buyer cut goods into narrow strips).

That simple depreciation alone usually does not constitute a substantial change in the condition of the good is consistent with the doctrine of revocation of acceptance because the doctrine is meant to remedy a situation in which a latent defect arises. If simple depreciation of the non-conforming good was enough to nullify the revocation of acceptance, a buyer might not be able to

revoke acceptance of a good with a <u>latent</u> defect.

Furthermore, Deere's refusal to accept the return of the combine undermines its argument that Johnson failed to revoke acceptance as a matter of law. How does one return a combine when the dealer refuses to take it back -- park it, perhaps, illegally in their lot? We find unpersuasive the premise of Deere's argument: that a seller can refuse to accept the return of a non-conforming good, and then claim that the buyer nullified his revocation by not returning the good in question.[5]

Most important for the case at hand, the issue of whether a buyer has effectively revoked acceptance is a factual one. <u>Royal Lincoln-Mercury Sales, Inc. v. Wallace</u>, 415 So.2d 1024, 1028 (Miss. 1982). For the reasons outlined above, we think that a reasonable jury could have concluded -- despite Johnson's continued use of the combine -- that he effectively revoked acceptance of the combine on March 5, 1995. The district court's denial of Deere's motion for judgment as a matter of law was thus correct.

**IV**

We turn next to Johnson's appeal. Johnson argues first that the district court erred when it amended the pleadings under Rule 15(b) and consequently awarded damages to Deere. Second, Johnson argues that there was insufficient evidence to support the jury

---

[5]To be precise, Deere did demand the return of the combine after the initiation of this lawsuit. Nevertheless, up to the filing of the lawsuit in 1995, the evidence indicates that Deere would not accept the return of the combine.

13

determination of the fair rental value of the combine.

**A**

We first address Johnson's appeal of the district court's amendment of the pleadings under Rule 15(b) of the Federal Rules of Civil Procedure, and the ensuing judgment entered for Deere. After the jury returned a verdict for Johnson, Deere filed a 15(b) motion to amend the pleadings to conform to the evidence presented. The motion raised the legal theory of quantum meruit -- a legal theory that neither party had raised prior to the jury verdict. The district court granted the motion. It then awarded Deere the rental value of the combine minus Johnson's down payment and any interest on that down payment. Johnson argues, in short, that the amendment of the pleadings violated his right to procedural due process because it left him with no chance to devise an appropriate defense to the legal theory of quantum meruit.[6]

Rule 15(b) of the Federal Rules of Civil Procedure provides:

---

[6] Notwithstanding the remaining analysis in this section, we note, in passing, that even if the amendment of the pleadings under Rule 15(b) were proper, Deere still should not recover, without taking the appropriate steps to somehow set aside the verdict -- a verdict that found against Deere and awarded it nothing. Rule 15(b) allows a court to modify the pleadings to conform to the evidence presented, but the rule does not provide the authority to reverse the jury's verdict and then turn it bottom-side up. The jury's verdict in this case has never been set aside; indeed, the district court denied both Deere's and Johnson's motions for judgment as a matter of law. Neither the plaintiff nor the district court addressed this lacuna in the reasoning that led to the entry of a judgment for Deere based on the conformed pleadings. Nevertheless, because the parties briefed the issue as one of procedural due process and fair notice, we decide solely on that basis.

14

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, *even after judgment*.

Id. (emphasis added). We review Rule 15(b) amendments for abuse of discretion. Triad Electric & Controls, Inc. v. Power Systems Engineering, Inc., 117 F.3d 180, 191 (5th Cir. 1997).

As has been often said, the principal purpose of Rule 15(b) is judicial economy. If the parties either expressly or implicitly consented to having a matter litigated, and the evidence provides the court with sufficient guidance to resolve the matter, amending the pleadings saves judicial resources.[7]

Nevertheless, saving resources usually takes a back seat to procedural due process. Thus, in the absence of express consent, "trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b), [and] such inferences are to be viewed on a case-by-case basis and in light of the notice demands of procedural due process." Triad Electric, 117 F.3d at 193-94 (quoting Jimenez v. Tuna Vessel Grananda, 652 F.2d 415, 422 (5th Cir. 1981). The due process concerns are most acute when a party

---

[7]According to the leading treatise on federal procedure, "Rule 15(b) [is] designed to avoid the tyranny of formalism that was a prominent characteristic of the former practice and to avoid the necessity of a new trial." Charles Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1491 (2d ed. 1990).

seeks a pleading amendment post-verdict.  T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour, 629 F.2d 338, 370 (5th Cir. 1980)("[I]t is not often that amendments are allowed after the close of evidence, since the opposing party may be deprived of a fair opportunity to defend and offer any additional evidence."); see also Morgan and Culpeper, Inc. v. Occupational Safety and Health Review Commission, 676 F.2d 1065, 1068 (5th Cir. 1982)("[W]hile it is true that amendments ... should be freely granted, it is just as certain that the company charged should be given an opportunity to fully respond to the new theories presented.").

In this case, the district court amended the pleadings to allow for the legal theory of quantum meruit, but did so after the close of evidence and after the jury returned its verdict.  Our review of the record shows that neither party mentioned, even in a whisper, quantum meruit prior to Deere's 15(b) motion.  Thus we are not surprised that Deere points to nothing in the record that would support any such finding of express consent.  Consequently, we must find that the parties did not expressly consent to having this theory tried to the jury. Express consent, however, is only one of two bases for amendment under Rule 15(b); implied consent provides a second basis, and this seems to be the centrality of Deere's argument.

Deere contends that it actually raised and litigated the quantum meruit claim at trial, even though it never used the "magic

16

words" quantum meruit. Deere argues that Johnson implicitly consented to having this claim tried because he failed to object to evidence offered about the reasonable rental value of the combine.

Our review of the record shows that this case was tried as a contract case in which Deere sought to hold Johnson liable for the full amount of the loan contract. Deere introduced evidence with respect to the rental value of the combine to offset Johnson's claim for the return of the down payment in the event that the jury found for Johnson. The fact that neither Deere nor Johnson considered the rental evidence under a quantum meruit theory is evidenced by the verdict form itself. If, as Deere argues, a quantum meruit claim was implicitly understood by both parties, Deere surely would have objected to the verdict form, which provided no basis for a quantum meruit award in favor of Deere.

Finally, as we have suggested earlier, the amendment of the pleadings to state a quantum meruit claim implicates the due process clause. If Johnson had been put on notice about this claim before trial, he would have had an opportunity to offer evidence to negate Deere's contention that he expected to pay for the use of the combine after he offered to return it. This evidence would have been available to Johnson, especially in the light of Deere's initial refusal to accept the combine's return. Because Deere failed to raise the claim at any point during the trial, Johnson was not on notice as to the issue that was allegedly being litigated, and thus could not construct an appropriate defense. In

17

this case, amending the pleadings -- after the close of evidence and after the return of the verdict -- violated Johnson's right to procedural due process, and thus the district court abused its discretion by allowing an amendment under Rule 15(b).  It follows that the judgment entered in favor of Deere must be and is reversed.

**B**

Finally, we turn to Johnson's appeal of the denial of his post-verdict motion for judgment notwithstanding the verdict. Johnson's argument to the district court -- which he reasserts on appeal -- was that there is insufficient evidence to support the jury determination of the fair rental value of the combine.  We first observe that Johnson objected to only part of the evidence that was introduced concerning the rental value of the combine.[8] In addition, Johnson failed to object to the verdict form itself, which allowed a set-off based on the reasonable rental value of the combine.  Finally, Johnson failed to move for a partial directed verdict on the basis that there was insufficient evidence to support a set-off.

Our inquiry into the evidence supporting a jury verdict is especially limited when the moving party, as here, fails to seek a

---

[8]Johnson objected on hearsay grounds to the introduction of an appraisal estimating the number of hours on the combine.  The court did not abuse its discretion in allowing the introduction of this evidence because the appraisal was made by a person with knowledge of the hours of use on the combine and kept in the regular course of business (i.e., the appraisal was a business record).

directed verdict or challenge the sufficiency of the evidence at trial.  We should inquire only "whether there was any evidence to support the jury verdict, regardless of its sufficiency." Coughlin v. Capital Cement Co., 571 F.2d 290, 297 (5th Cir. 1978).  Because Johnson failed to object to the sufficiency of the evidence in the district court, the Coughlin standard applies.

The verdict form clearly delineated the jury's task, which the jury faithfully executed.  First, the jury was to decide whether Johnson breached the contract.  The jury said "no."  Second, the jury was to decide whether Deere breached its warranty. The jury said "yes."  If the jury found for Johnson -- which it did -- it was to assess the amount of the down payment, the interest on the down payment, and the incidental expenses incurred.  After adding these three sums, the jury was to determine the fair rental value of the equipment for the period of Johnson's use and subtract it from the sum due Johnson.  Johnson now argues that there was insufficient evidence to support a finding as to the fair rental value of the combine.  He is wrong on this point.

Three items of evidence support the verdict.  First, an appraisal by F&E Farms was entered into evidence through the testimony of Dave Broeker.  The appraisal indicated 762 total hours on the combine.  Second, Chuck Cariker, the current manager for Parker, testified that the rental rate on a combine in 1996 was about $100 an hour.  Third, Walter Gray, a previous manager for Parker, testified that the current (i.e., 1997) rental rate for

19

used combines was $90 to $100 an hour.  Admittedly none of this evidence goes directly to the value of the use of the defective combine in 1994 or 1995.  Nevertheless, our inquiry on appeal is narrow -- whether there was <u>any</u> evidence to support the jury verdict.  We find that the testimony of these three witnesses, plus the appraisal, is enough to support the jury verdict under this limited standard of review.

V

In sum, we hold: (1) that the district court committed no error when it denied Deere's motion for judgment as a matter of law because a reasonable jury could have concluded that Johnson revoked his acceptance of the combine; (2) that the district court erred when it amended the pleadings after the return of the jury verdict based on a legal theory that was not expressly or implicitly tried to the jury; and (3) that there was sufficient evidence to support the jury verdict.[9]

The jury in this case acted as it was instructed on the jury form -- a form that was agreed to by both the plaintiff and the defendant.  The verdict says that this case was a "wash" -- neither

---

[9]Johnson also contends that the district court erred in (1) awarding Deere costs; (2) denying his request for a jury instruction on punitive damages; and (3) denying his request for attorney's fees.  We address each of these claims in the light of our holding.

The district court abused its discretion only in awarding Deere costs, and on this point is reversed.  The district court did not abuse its discretion in denying Johnson's jury instruction on punitive damages or his request for attorney's fees.

party is entitled to relief.  We therefore reverse the amended judgment entered by the district court and remand for entry of a take-nothing judgment in accordance with the verdict.[10]

REVERSED and REMANDED for entry of judgment

---

[10]Chief Judge King concurs in the judgment only.