2007 VT 55

# In re Petition of Waitsfield-Fayston Telephone Company, Inc., d/b/a Waitsfield Telecom, d/b/a Waitsfield Cable and d/b/a Champlain Valley Telecom, to Establish a Rate for Rental of Space on Poles Owned by Green Mountain Power Corporation

[928 A.2d 1219]

No. 05-498

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned

Opinion Filed June 29, 2007

*Harriet Ann King* of *King & King*, Waitsfield, for Appellant, Green Mountain Power Corporation.

*Paul J. Phillips* of *Primmer Piper Eggleston & Cramer PC*, St. Johnsbury, for Appellee, Waitsfield-Fayston Telephone Company, Inc.

*John J. Cotter*, Montpelier, for Appellee, Department of Public Service.

¶ 1. **Dooley, J.** Appellant Green Mountain Power Corporation (GMP) appeals a Public Service Board order requiring GMP to refund to appellee Waitsfield-Fayston Telephone Company, Inc. (WFTC) "make-ready" charges paid by WFTC over a period of years. The charges, which were separate from annual rental charges, were for making ready poles owned by GMP to accept telephone lines in addition to the electric lines already on them. GMP raises a host of arguments against the make-ready refund, including that it was time-barred and that GMP lacked sufficient notice that the make-ready charge issue was in the case before the Board. We agree that no claim for the refund of make-ready charges was properly in the case and therefore reverse.

¶ 2. WFTC is a Vermont corporation that provides telephone and cable television services that are regulated by the Board. GMP is an electric utility provider whose services are also regulated by the Board. GMP owns electricity distribution poles to

which WFTC sought to attach its telephone and cable television lines; thus, in 1983 the parties entered into a contract setting the annual rent WFTC would pay to share thousands of GMP poles.[1] The contract, by its terms, summarized the parties' agreement as to charges for poles. Apart from the contract price, GMP billed WFTC for make-ready charges for approximately twenty years.

¶ 3. Years after the parties' contract, in 2001, the Board adopted revised Rule 3.7 governing pole attachment rates that a "pole-owning utility," such as GMP, may charge to an "attaching entity" such as WFTC. Public Service Board Rule 3.702(B), (F). In light of the lower rates generally provided for in the rule, WFTC terminated the contract with GMP in February 2003 and, in December 2003, petitioned the Board to set new rates pursuant to Rule 3.7. At the time of WFTC's petition, GMP charged WFTC $35.19 per pole in annual rent for approximately 3900 poles, and $25.13 per pole for approximately 4300 poles.[2] The $35.19 rate was the highest pole rental rate GMP charged to any "attaching entity" in the state.

¶ 4. WFTC's 2003 petition was not the first time the parties brought a rate dispute to the Board. In 1997, CVT, which subsequently merged into WFTC, similarly challenged GMP's pole attachment charges in Board Docket No. 5960. The parties to Docket No. 5960 entered into a stipulation for pole attachment rates for 1994 through 1997. Ultimately, due to uncertainty while the Board developed its rule on pole attachments, the parties continued the effectiveness of the stipulation indefinitely pending adoption of the new rule.

---

[1] There are actually two agreements. During the 1990's WFTC purchased Champlain Valley Telecom (CVT) from Continental Telephone Company of Vermont, Inc. (Continental), and CVT thereafter merged into WFTC. Continental had entered into an agreement with GMP that is virtually identical to the 1983 WFTC agreement. Because the two agreements contain materially identical language, we refer to them jointly as "the contract." We note, however, that CVT, before and after it merged with WFTC, sought relief from its contracts because it believed the rental rates were too high. Except with respect to the poles to which CVT lines were attached, WFTC did not seek relief until much later.

[2] The difference reflects whether the poles are in the CVT service area or in the service area for the rest of WFTC. The CVT rate was $25.13 per pole per year, set in stipulations to temporarily settle CVT's challenge to GMP's rates in a Board proceeding. The rate for the rest of WFTC is $35.19 per pole per year, set under the 1983 contract and its cost escalators.

¶ 5. The 2003 WFTC petition asked the Board to set annual pole rental rates pursuant to Rule 3.7, and to order a refund of WFTC's overpayment since January 1, 2002 — the effective date of rates set by the new rule. Public Service Board Rule 3.711. As to the refund specifically, WFTC asked the Board to order a reimbursement of its "overpayment of pole rental charges" from January 1, 2002 to December 30, 2003. The petition never mentioned make-ready charges and sought no relief with respect to them, apparently because the new rule specifically provided for make-ready charges and established the basis for calculating them. See Public Service Board Rule 3.708(G).

¶ 6. Following prefiled testimony and an evidentiary hearing, the hearing officer granted WFTC's request and recommended an annual rate of $16.00 per pole, but generally rejected WFTC's request for overpayments going back to 2002.[3] He also found that because the parties' contract was "intended to include all the costs of pole attachments, including make-ready costs," GMP should return to WFTC all make-ready payments predating January 1, 2002, and he gave WFTC an opportunity to make an additional filing showing that amount.

¶ 7. WFTC made the additional filing to capture the make-ready charge refund, but it could find records of these payments only going back to 1992. It proposed a make-ready reimbursement figure of $386,984.10, which the hearing officer adopted. The Board affirmed the hearing officer's recommendations and ordered the refund, including the refund of the make-ready costs.

¶ 8. On appeal, GMP contests only the make-ready charge refund order, raising ten separate arguments against this part of the Board's order. Because one of GMP's claims resolves this appeal, we address it alone.

¶ 9. GMP's ninth and most troubling argument is that the Board did not provide GMP sufficient notice of the make-ready refund. Here, GMP claims that the Board's order violated its constitutional right to procedural due process, as well as its right against governmental takings, and violated a provision of Vermont's Administrative Procedure Act, which requires parties to a

---

[3] The hearing officer required a refund of part of the amount paid for the CVT area poles because CVT had terminated its 1983 agreement and acted under the settlement stipulations. He denied any refund for the rest of WFTC's service area because WFTC did not terminate its contract with GMP until 2003. Thus, WFTC received a refund of more than $15,500 out of the nearly $82,000 it sought.

contested case to be given the opportunity "to respond and present evidence and argument on all issues." 3 V.S.A. § 809(c). We look to the statutory argument first. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

¶ 10. In reviewing the adequacy of notice pursuant to 3 V.S.A. § 809(c), "we must examine whether or not the parties were given an adequate opportunity to prepare and respond to the issues raised in the proceeding." *In re Twenty-Four Vermont Utils.*, 159 Vt. 363, 369, 618 A.2d 1309, 1312-13 (1992) (quotation and citation omitted). In implementing the command of the statute, the Board has, at least in part, adopted the Vermont Rules of Civil Procedure subject to modification where statute or specific Board rules provide. *In re Twenty-Four Vermont Utils.*, 159 Vt. 339, 356, 618 A.2d 1295, 1305 (1992); Vermont Public Service Board Rules 2.103, 2.105.

¶ 11. Our analysis begins, as this case did, with WFTC's petition. The term "make-ready" does not appear. WFTC's petition asked the Board to: (1) set a rental rate pursuant to revised Rule 3.7, and (2) "require GMP to Refund Overpayments of Pole Rental Charges Made by WFTC." Specifically, WFTC sought overpayment refunds from pole rental charges paid during the period from January 1, 2002 to December 31, 2003.

¶ 12. Vermont Rule of Civil Procedure 8(a) requires that a complaint contain a statement of each claim. A pleading is sufficient under the rule if it gives " 'fair notice of the claim and the grounds upon which it rests.' " *Limoge v. People's Trust Co.*, 168 Vt. 265, 274, 719 A.2d 888, 893 (1998) (quoting *Molleur v. Leriche*, 142 Vt. 620, 622, 458 A.2d 1139, 1140 (1983)). Failure to plead a claim means that the claim is not in the case, and the court may not grant relief on it unless the claim subsequently comes before the court. See *Molleur*, 142 Vt. at 622, 458 A.2d at 1140.

¶ 13. A claim may be added by amendment of the complaint. V.R.C.P. 15(a). Pursuant to Rule 15(b), a claim may enter the case without formal amendment:

(b) Amendments To Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

V.R.C.P. 15(b). The Board has specifically held that V.R.C.P. 15(b) applies to its proceedings. *In re Dep't of Pub. Serv.*, No. 7195, Order re: Motion to Alter or Amend at 4 n.3 (Dec. 8, 2006). Under the terms of the rule, we take the Board's decision in this case as a ruling that the issue of refunding make-ready charges entered the proceeding either with GMP's implied consent or over its objection because it was not prejudiced. In that light, we examine more closely the proceedings after the filing of the petition.

¶ 14. The first reference to make-ready charges occurred during the cross-examination of one of GMP's witnesses, through whom WFTC's counsel sought to admit two letters dealing with make-ready charges. Counsel for GMP objected to the admission of the letters, stating: "[a]s I understand [WFTC's] petition in this proceeding it is not related to make-ready charges. It simply requests the Board to set the rate for the annual rental charge for attachments to GMP's poles." Counsel for GMP continued: "[i]f there is another issue relating to make-ready, finding out about it at the technical hearing doesn't seem to be conducive to an efficient resolution of this dispute." Counsel for WFTC responded that "the only issue relative to make-ready *does not concern the amount of the charges or the rates that are charged,* but simply concerns the terms and conditions under which [GMP] provides

pole attachment services to [WFTC] . . . *and I'm simply trying to establish that [GMP] in fact does charge make-ready charges to [WFTC].*" (Emphasis added.) Later, counsel for WFTC stated that, with respect to the make-ready letters, he was "*not* trying to prove that the rates [were] exorbitant or [that] they [were] deficient in any [] way," rather, he was "just trying to show there [were] rates." (Emphasis added.)

¶ 15. This exchange led to a broader discussion of the issue of make-ready charges — specifically, whether those charges were included within the terms of the original contract. Counsel for GMP persisted in questioning the relevance of the make-ready charge letters due "to the fact that [WFTC's] petition . . . never mention[ed] make-ready charges. It merely ask[ed] this Board . . . to establish a pole rental." At this point counsel for WFTC explained to the officer that "the [contract] rates that are being charged, which are at issue here, were intended to cover all pole costs." Counsel for GMP urged that "there [had] been no testimony on the part of [WFTC] or GMP on make-ready charges."

¶ 16. Ultimately, the hearing officer overruled GMP's objection to the letters. Later in the hearing, counsel for GMP recalled WFTC's witness "to respond to [the officer's] questions with respect to the charges for make-ready." This cross-examination, and the follow-up by counsel for WFTC, produced the evidence on which the hearing officer ordered a refund of all make-ready charges paid to GMP by WFTC. The evidence, and the arguments of the parties, however, did not change the rationale under which WFTC introduced the subject of make-ready charges. WFTC made no claim for reimbursement of make-ready charges.

¶ 17. Following the hearing, WFTC submitted a brief and proposal for decision. The proposal for decision proposed findings with respect to make-ready charges, but reiterated WFTC's claims for relief, without adding any relief with respect to make-ready charges.[4] To the extent WFTC proposed that the make-ready findings were relevant to the decision, it was that they supported WFTC's entitlement to a partial refund of pole rental charges retroactive to January 1, 2002, the effective date of the new Board rules. WFTC did not seek any refund of make-ready charges,

---

[4] The relief sought was to set an annual rental rate at $14.18 per pole, make the rate effective on January 1, 2002, order GMP to refund rent overpayments from January 1, 2002, and order GMP to amend its existing pole attachment tariffs to give nondiscriminatory access to all attaching entities.

even those incurred from January 1, 2002 — its proposed retroactivity date — to the date of the order. In a reply to WFTC's proposal, GMP argued that the fact that it imposed make-ready charges did not support making a new rental rate retroactive.

¶ 18. As set out above in the summary of proceedings, the hearing officer proposed a decision that included an order to refund make-ready charges. He stated:

> I also accept WFTC's argument that the contract with GMP was intended to include all the costs of pole attachments, including make-ready costs, and I conclude that GMP ought to be required to return these pay- ments. It is unfortunate that WFTC did not include any information about the exact amount of the payments it made under protest, other than to describe them as "hundreds of thousands of dollars." However, this infor- mation should be available to both companies, and the Board can require this calculation after the issuance of the final order.

GMP objected to the proposed order, making, in summary form, much of the argument it makes here.[5] The hearing officer responded in part that "resolution of the make-ready issue is closely tied to the pole attachment rate issue, and its resolution is a reasonable, ancillary, extension of the rate issue." The Board initially accepted the hearing officer's proposed decision without mentioning most of GMP's objections.[6] In response to GMP's motion for reconsideration, the Board rejected GMP's request to allow it to submit evidence on the make-ready charge issue. In response to GMP's procedural argument, the Board explained:

> An argument that GMP has emphasized is that the issue of make-ready charges only arose at [the] hearing, and that it had no opportunity to present evidence for its own side. However, GMP made no request for a continuance nor for an opportunity to present evidence on this issue,

---

[5] GMP also made many of the same arguments in its response to WFTC's refund calculation filing.

[6] GMP submitted to the Board comments on the hearing officer's final proposed decision, urging the Board not to accept the proposed decision and raising briefly the objections it had raised to the hearing officer.

either at hearing or subsequently. GMP cannot now complain about a lack of opportunity to be heard.

¶ 19. Returning to Rule 15(b), we cannot conclude that the issue of make-ready charges entered the case by the first alternative method — GMP's implied consent. In order to find consent for an unpleaded issue, "it must appear that the [injured] party understood the evidence was introduced to prove the unpleaded issue." *Vineyard Brands, Inc. v. Oak Knoll Cellar*, 155 Vt. 473, 485, 587 A.2d 77, 83-84 (1990) (quotation and citation omitted). Applying the identical federal rule, Wright and Miller speak to this issue in exactly the context that was before the hearing officer:

> Furthermore, when the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear.

6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1493, at 32-35 (2d ed. 1990). Here, there was no indication at trial that WFTC was seeking to raise a new issue because its counsel explicitly and specifically said that he was not raising the unpleaded issue of the illegality of GMP's action in collecting make-ready charges. Even when the more detailed evidence about make-ready charges entered the case, WFTC did not suggest that it supported a new claim for a refund. Further, in its written filing after the hearing, WFTC proposed findings on make-ready charges but only in support of its preexisting claim for a retroactive partial refund of pole rental charges going back only to January 1, 2002. The pole rental charges to be refunded did not include make-ready charges. See *Wilk Paving, Inc. v. Southworth-Milton, Inc.*, 162 Vt. 552, 558, 649 A.2d 778, 783 (1994) (where defendant failed to raise affirmative defense in pleadings,

trial briefs, and requests for findings and proposed conclusions of law, trial court properly denied a post-judgment motion under V.R.C.P. 15(b) to allow defendant to amend its answer to raise the defense).

¶ 20. By its reference to GMP's failure to seek a continuance, the Board apparently concluded that the legality of the make-ready charges was in the case under the third sentence of Rule 15(b) and not because GMP had impliedly consented to litigating the issue. Although the third sentence allows the Board to consider an issue over the objection of the opposing party in certain circumstances, it requires the pleadings to be amended. See V.R.C.P. 15(b). Thus, we have held in similar circumstances under Rule 15(b) that "the party seeking to admit the evidence must move for an amendment of the pleadings." *Withington v. Derrick*, 153 Vt. 598, 605, 572 A.2d 912, 915 (1990). The point of the amendment is to make clear to the opposing party that the new claim is in the case and must be defended against. Thus, the need for the amendment is present "even where there is evidence in the record, introduced as relevant to some other issue, which could support the amendment." *Desrochers v. Perrault*, 148 Vt. 491, 494, 535 A.2d 334, 336 (1987).

¶ 21. In this case, WFTC never moved to amend its petition, and disavowed that the issue of the legality of make-ready charges was in the case. In these circumstances, there was no obligation on GMP to move for a continuance. The third sentence of the rule does not authorize consideration of the legality of make-ready charges in this case.

¶ 22. We recognize that Board orders generally enjoy a strong presumption of validity, especially where the Board has employed its "particular expertise" in reaching its conclusion. *In re Vermont Yankee Nuclear Power Station*, 2003 VT 53, ¶ 5, 175 Vt. 368, 829 A.2d 1284. The issue before us, however, is one of procedure that does not involve the Board's special expertise. When such issues arise in the trial courts, we review them for abuse of discretion. *Wilk Paving*, 162 Vt. at 558, 649 A.2d at 783. We believe that this standard of review is appropriate for Board procedural orders of this type.

¶ 23. Even accounting for the discretion of the Board, we conclude that its consideration of the legality of the make-ready charges under these circumstances was improper. WFTC did not

raise the make-ready charge issue, despite numerous opportunities to do so. Indeed, it clearly stated that it was not claiming that the make-ready charges were illegal and it was not seeking a refund on that basis. Thus, the hearing officer raised the make-ready charge refund issue sua sponte, with no warning to GMP and no opportunity for GMP to respond to it.

¶ 24. The cases arising under the identical federal rule, F.R.C.P. 15(b), indicate two possible remedies for a violation. In some cases, the decisions have held that an unpleaded issue that is improperly introduced into the case under Rule 15(b) cannot be considered. E.g., *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1013 (9th Cir. 2004) (reversing trial court's sua sponte determination of issue for defendant, contrary to F.R.C.P. 15(b), and remanding with directions to award judgment for plaintiff). In others, the decisions have allowed the unpleaded claim, but have remanded the case to give the appealing party an opportunity to respond to it. E.g., *MBI Motor Co. v. Lotus/East, Inc.*, 506 F.2d 709, 713 (6th Cir. 1974) (remanding to district court to reopen case and allow submission of evidence on issue determined by court in violation of F.R.C.P. 15(b)). We conclude that the proper remedy in this case, under our precedents, is the former. In *Desrochers,* the defendant sought to amend the answer to assert a counterclaim after the close of the evidence, asserting that the admitted evidence supported the counterclaim. 148 Vt. at 493, 535 A.2d at 336. We noted that the plaintiff had objected to the evidence in support of the unpleaded counterclaim, and the issue was not tried by express or implied consent. *Id.* We held that the court was correct in denying the counterclaim: "[A] post-judgment amendment which brings in an entirely extrinsic theory, or changes the theory on which the case was actually tried, is not permissible." *Id.* at 494, 535 A.2d at 336. In essence, the hearing officer here did exactly what we prohibited in *Desrochers* — he amended the petition to bring in a theory and claim extrinsic to those in the petition as pleaded. See also *Withington*, 153 Vt. at 605, 572 A.2d at 915 (denying consideration on appeal of issue not covered by the pleadings, not tried by consent, and for which no motion to amend was filed). Similarly, in *Molleur*, the court submitted to the jury an unpleaded claim for quantum meruit. 142 Vt. at 622, 458 A.2d at 1140. We held that the theory had not entered the case by the express or implied consent of the opposing party under Rule 15(b) and thus "was not an issue in

the trial of the case." *Id.* On this basis, we reversed a jury verdict based on quantum meruit and entered judgment for defendant. *Id.* at 622-23, 458 A.2d at 1140.

¶ 25. Because the unpleaded claim for a refund of make-ready charges was not properly before the Board, we hold that the Board erred in considering the claim and ordering a refund of the make-ready charges. We reverse the Board's make-ready refund order on that basis, and thus do not reach the alternative grounds for reversal raised by GMP.

*Reversed.*