GREGORY, Circuit Judge,
concurring in part and dissenting in part:
Dan Ryan Builders, Inc. (“Dan Ryan”) contracted with Robert Lang and his construction business, Lang Brothers, Inc. (collectively “Lang”) to fix the steep grada *986 tion of a portion of land that would not have otherwise supported the construction of homes. Lang botched the job, and Dan Ryan had to pay $1,722,104.91 to fix it.* The district court found all the elements of a breach of contract: that the contract was enforceable, J.A. 2369 n.43, that Dan Ryan paid Lang in full for the work, J.A. 2307, and that Lang “[u]nquestionably ... failed to live up to its contractual obligations, and [Dan Ryan] suffered damages as a result,” J.A. 2375. Yet, because Dan Ryan did not formally amend its complaint to name one of the several contracts at issue,-the district court allowed Lang to escape liability. I cannot agree with this inequitable result, which is exactly what Rule 15(b) of the Federal Rules of Civil Procedure was designed to prevent. I therefore must dissent from Part III of my good colleagues’ opinion.
Rule 15(b) allows liberal amendment of the pleadings to conform to the evidence presented at trial. See Equal Emp’t Opportunity Comm’n v. Gen. Elec. Co., 532 F.2d 359, 367 n. 17 (4th Cir.1976). Formal amendment, however, is not always required. See Fed.R.Civ.P. 15(b)(2). “When an issue not raised by the pleadings is tried by the parties’ express or implied consent, it must be treated in all respects as if raised in the pleadings,” and “failure to amend does not affect the result of the trial of that issue.” Id. This liberalism was meant to obviate the necessity of a new trial every time an opposing party points to a technical deficiency in pleading. See 6A Fed. Prac. & Proc. Civ. § 1491 (3d ed.2014) [hereinafter Fed. Prac. & Proc.]; see also Deere & Co. v. Johnson, 271 F.3d 613, 621 (5th Cir.2001) (“As has been often said, the principal purpose of Rule 15(b) is judicial economy.”). In fact, the rule has always been construed to promote resolution of cases on the merits, rather than on the pleading skills of .counsel. See Fed. Prac. & Proc. § 1493. In other words, Rule 15(b) helps litigants and the courts “avoid the tyranny of formalism.” Kirkland v. District of Columbia, 70 F.3d 629, 634 (D.C.Cir.1995); Dunn v. Ewell (In re Santa Fe Downs, Inc.), 611 F.2d 815, 817 (10th Cir.1980).
The majority insists on formalism, finding no implied consent to try the issue of whether Lang - breached the Fill Slope Contract. However, this was the entire gravamen of the five-day trial. We may find implied consent where the defendant: 1) fails to object to evidence relating to the unpleaded issue; 2) actually produces evidence bearing on the issue; or 3) offers direct arguments contesting the issue. See Fed. Prac. & Proc. § 1493; see also McLeod v. Stevens, 617 F.2d 1038, 1040 (4th Cir.1980) (finding admission of evidence without objection an indicium of implied consent). All three criteria are present here. Even though Dan Ryan’s post-trial submission omitted mention of the Fill Slope Contract, Lang did not object to introduction of the contract into evidence, and the issue also had been teed up since at least the parties’ pre-trial statement. Dan Ryan specified in its brief statement of its claims that “the Lang Defendants owed legal duties to [Dan Ryan] from four separate and distinct contractual undertakings.” J.A. 293-94. Dan Ryan’s theory was unambiguously that Lang breached these duties by “[i]mproper placement and compaction of fill material.” J.A. 294. Lang confronted these arguments head on in its own section of the pre-trial statement: “The Lang Defendants did not breach any contract with [Dan Ryan].” *987 J.A. 296. Lang’s theory was that even if it had followed proper construction practices, “the slope would have still failed due to a layer of colluvium in the soil.” J.A. 301. It thus sought to place the blame on Hornor Brothers Engineering, which Lang alleged drew up lot grading plans that did not take into account certain soil properties.
In this way, Lang was fully prepared to litigate, and indeed litigated in substance, whether it was “liable to [Dan Ryan] for breach of contract in relation to [the Fill Slope Contract].” J.A. 305 (contested issue from pre-trial statement proposed by Lang). During the trial, “[t]he experts all agree[d] that [Lang Brothers Inc.] did not employ the standard construction practices that, if applied in the first instance, would have ensured the slope’s stability.” J.A. 2374 n.44. It turns out that Lang built the fill slope based on rudimentary drawings that were never meant to serve as a full set of engineering plans and specifications. Lang did not ensure the slope foundation was built according to the proper ratio, and did not install the appropriate draining system, among other failings. Basically, Lang picked up dirt from one part of the development and set it on top of another. The district court had no trouble ascertaining that, according to the “credible evidence,” Lang’s “poor construction practices were the sole proximate cause of the slope failure.” J.A. 2374 n.44.
This is not a case where the evidence “incidentally tends” to establish that Lang’s shoddy construction breached a contractual duty to build a viable fill slope. Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 401 (4th Cir.1999). In determining whether an issue has been tried by consent, we rightly should be concerned with the defendant’s potential lack of opportunity to defend against a new allegation. But here, in addition to Lang having had adequate notice of just what was at issue, treating the Fill Slope Contract as if it had been included in the pleadings in no way prejudices Lang. Prejudice occurs, like in the Withrow case cited, by the majority, where there is “failure to afford [a litigant] an opportunity to present evidence bearing on that [new] claim’s resolution.” Withrow v. Williams, 507 U.S. 680, 696, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Lang does not even claim any . potential prejudice, perhaps because it must admit that inclusion of the Fill Slope Contract in Dan Ryan’s complaint would not have compelled presentation of any different evidence, or reliance on any alternative theory of defense.
Given the ample notice, implied consent, and utter lack of prejudice to Lang, I would reverse the district court and find a breach of the Fill Slope Contract.

 This figure is based on Dan Ryan’s post-trial submission asserting that expenses related to the slope remediation totaled $1,772,104.91 before prejudgment interest. PL’s Proposed Findings of Fact and Conclusions of Law at 70, ECF No. 256.