Filed 04/08/25



VERMONT SUPERIOR COURT



CIVIL DIVISION

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org

Case No. 25-CV-01029

---

ARD Realty LLC v. Vermont Department of Health

---

## FINDINGS AND ORDER

This is an appeal from two decisions of the Department of Health ("the Department") regarding the operation of The Cortina Inn in Rutland Vermont. The court held a final hearing on this matter on March 24, 2025. The Appellant was represented by Attorney Frank Urso and the Appellee was represented by Attorney Justin Sheng. For the following reasons, the court declines to review the December 3, 2024 suspension order and AFFIRMS the Department's February 28, 2025 decision denying Appellant's request to reinstate its license.

### Standard of Review

This appeal is brought pursuant to 18 V.S.A. § 128(a), which states:

> Any person aggrieved by an act, decision, or order of the Commissioner … may appeal within 30 days to the Superior Court of the county in which such person resides or maintains a place of business. The court shall consider the matter de novo, and all persons and parties in interest, as determined by court rule, may appear and be heard.

The Vermont Supreme Court in *State v. Madison*, 163 Vt. 360 (1995) discussed the term "de novo" and the difference between a "review de novo" and a "hearing de novo." In discussing this difference, the Court looked at the use of the term "de novo consideration" as used by other courts. *Id.* at 372. The Court stated:

> The terms "de novo review" and "de novo consideration" are also used in other contexts involving one court reviewing the decision of another court or quasi-judicial body. *See In re Price–Watson Co.,* 66 B.R. 144, 149 (Bankr.S.D.Tex.1986) (term "de novo review" in bankruptcy statute is akin to term "de novo determination" from Magistrates Act, and "does not mean 'de novo trial' "); *State ex rel. Oklahoma Bar Ass'n v. Carpenter,* 863 P.2d 1123, 1128–29 (Okla.1993) (Oklahoma Supreme Court review of bar disciplinary proceedings is "de novo consideration," which entails disciplinary panel submitting complete record for de novo examination by court); *cf. In re Hill,* 152 Vt. 548, 555–56, 568 A.2d 361, 365 (1989) (distinguishing between review of Judicial Conduct Board recommendation in which great weight is given to Board's findings and "de novo review" in which no deference is given to original fact-finder, but not suggesting that latter standard would require complete retrial of disciplinary hearing before Supreme Court).

*Id.* The Court concluded that "the consensus among courts and commentators is that the term 'review de novo,' in contrast to the terms 'hearing de novo' and 'trial de novo,' means that the reviewing court will reappraise the evidence in the record and reach its own independent conclusion on the matter at issue." *Id.* A review de novo does allow the court to consider additional evidence on the issue on appeal for good cause shown. *Id.*

The term "consider the matter de novo" in 18 V.S.A. § 128(a) is equivalent to the term "review de novo" as defined by the Court in *Madison*. The Court equated "de novo consideration" with "de novo review" and this court see no reason not to do the same. Thus, the court will review the record submitted, along with the additional evidence taken at the March 24, 2025 hearing, and apply its own independent conclusion as to whether the Department's decisions were correct.

Background

Appellant owns the Cortina Inn in Rutland, Vermont. Robert Manfredi is a thirty-four-year veteran Public Health Inspector for the State of Vermont Lodging and Dining Program. He has inspected the Cortina Inn approximately 50-60 times.[1] Mr. Manfredi, along with three other inspectors, conducted an inspection of the Cortina Inn on August 12, 2024. Ex. A. Mr. Manfredi prepared a report documenting the team's findings. *Id.* The report documented issues with sanitation where carpets and mattresses were unclean, rooms had fly activity, rooms missing smoke detectors, and there was evidence of rodent activity. *Id.* One of the rooms had missing ceiling tiles. Ex. B. One room had exposed wiring. *Id.* Another had clogged plumbing. *Id.* The report identified four critical violations and eleven noncritical violations of the Vermont Licensed Lodging Establishments Rule. Ex. A. The critical violations were found in 75 rooms and the noncritical violations were found in 119 rooms. *Id.* Representatives from the Cortina Inn did not have any objection to the report's findings.

The Department issued an abatement letter to the Appellant on August 20, 2024 requiring the Appellant to correct the critical violations by September 18, 2024 and correct all other violations by October 18, 2024. Ex. C.

On October 10, 2024, Mr. Manfredi and three other inspectors conducted a follow up inspection of the Cortina Inn. This inspection was not a full inspection, but rather a directed inspection focused on the rooms identified in August that had significant violations. Mr. Manfredi prepared a report documenting the violations observed on October 10, 2024. Ex. D. The inspectors observed continued issues with sanitation, plumbing, exposed electrical wires, rodents, and fly activity. Some of the critical violations observed in August had been corrected, but not all. Druv Kumar, a representative from the Cortina Inn was present for the inspection and did not object to any of the findings.

On November 25, 2024, Mr. Manfredi and three other inspectors conducted a third inspection of the Cortina Inn. This inspection was done at the request of Mr. Kumar, who had indicated the violations had been corrected. The team conducted a full inspection and Mr. Manfredi prepared a report documenting the violations observed on November 25, 2024. Ex. F. The team observed continued violations, including issues with sanitation, plumbing, fly activity, rodent activity, and signs of infestation of bed bugs. The report documented four critical violations and eleven noncritical violations. *Id.* The critical violations were observed in 25 rooms and the noncritical violations were observed in 91 rooms. There were 14 rooms that did not have violations. Mr. Kumar was present for the inspection and did not make any objection to the report's findings.

---

[1] Some of these inspections occurred during prior ownership of the Inn and when the Inn operated under a prior name.

25-CV-01029 ARD Realty LLC v. Vermont Department of Health

On December 3, 2024, the Department issued an order suspending Appellant's license to operate the Cortina Inn due to Appellant's failure to comply with the August 20, 2024 abatement order. Ex. H. The Department reviewed the three reports and their findings. *Id.* The Department determined that Appellant had corrected some of the violations observed in August, however, the Appellant violated the abatement order by not correcting all violations by October 18, 2024. *Id.* In addition, the Department determined that the Appellant violated the abatement order by allowing rooms with violations, including critical violations, to be occupied. *Id.* Of the 15 occupied rooms inspected in November, 13 had violations. *Id.*

The Department noted that Appellant had submitted documentation since August 20, 2024 regarding the steps it had taken to address the violations. *Id.* The Department noted that Appellant had enlisted the services of Waltham Pest Services to address the pest concerns raised by the Department. *Id.* Appellant submitted reports to the Department from Waltham Pest Services for inspections on August 22, September 11, September 24, October 9, October 24, and November 24, 2024. *Id.* The reports from Waltham Pest Services identified that it had identified five conditions at the Cortina Inn that was contributing to the pest issue. *Id.* These five conditions had been identified as early as March 2018 and as late as July 2023 after Appellant bought the Cortina Inn. *Id.* As of October 9, 2024, Appellant had not addressed these five conditions. *Id.* By October 24, 2024, Appellant addressed one condition, and another condition was addressed by November 14, 2024. *Id.* The remaining three conditions had not been resolved by Appellant at the time the Department suspended Appellant's license. *Id.*

The Department suspended Appellant's license effective December 3, 2024 for a period of at least sixty days. *Id.* The suspension order indicated the Department would reinstate the license after sixty days and after compliance with both statutory and regulatory requirements. *Id.*

In February of 2025, Appellant reached out to the Department asking for a reinspection. Mr. Manfredi and three other inspectors conducted an inspection on February 26, 2025.[2] Ex. J. Mr. Manfredi prepared a report detailing the observations he and the other inspectors made during the inspection. The team noted three critical violations and seven noncritical violations. *Id.* There were some improvements since the October inspection, but the inspectors observed continued plumbing issues, sanitation issues, rodent activity, and bedbug infestations. *Id.* One of the critical violations was a newly observed violation. After this inspection, the Department denied Appellant's request to reinstate their license on February 28, 2025.

Appellant appealed the December 3, 2024 suspension order in docket 24-CV-05414. Appellant voluntarily withdrew the appeal at a hearing on March 5, 2025 and the appeal was dismissed. Appellant initiated this appeal on March 6, 2025.

Analysis

Appellant seeks review of the Department's December 3, 2024 suspension order and the Department's February 28, 2025 denial of Appellant's request to reinstate their license. In addition, Appellant orally requested a permanent injunction at the final hearing. Each request will be addressed separately.

---

[2] Mr. Dale Shmit, a public health inspector, also testified about the February 26, 2025 inspection.

*December 3, 2024 Suspension Order*

Appellant's appeal of the December 3, 2024 suspension order is untimely. An appeal of an order of the Commissioner of the Department of Health must be filed within 30 days of the issuance of the order. 18 V.S.A. § 128(a). A timely appeal is jurisdictional. *Trask v. Dept. of Employment and Training,* 170 Vt. 589, 590 (2000) (mem.). Appellant filed a timely appeal in 24-CV-05414, but voluntarily withdrew the appeal on March 5, 2025. Appellant's decision to withdraw the initial appeal made this appeal untimely as to the December order as it was filed more than 30 days after the order issued. Appellant's initial, timely appeal did not toll the running of the 30-day appeal period. *Cf. Cattle Investors Mgmt. Corp. v. Poutre*, 148 Vt. 508, 509 n.2 (1987). Further, Appellant did not move to extend the deadline for filing a notice of appeal as allowed by V.R.A.P. 4(d). V.R.C.P. 74(b) (incorporating V.R.A.P. 3 and 4 procedures in Rule 74 appeals). Since the March 6, 2025 notice of appeal was more than 30 days after the December 3, 2024 order of suspension, this court is without jurisdiction to hear this appeal as to the suspension order.

*February 28, 2025 Denial*

The Court, having considered the record presented independently and de novo, concludes that the Department did not err in denying Appellant's request to reinstate their license. Pursuant to 18 V.S.A. § 4303(a), the Department adopted rules establishing "minimum standards for the safe and sanitary operation of food or lodging establishments." The Licensed Lodging Establishment Rule governs the safe and sanitary operation of the Cortina Inn. The Rule requires that "no room or any portion of the lodging establishment is rented unless the room or portion of the lodging establishment is safe and sanitary." Rule 8.1.3. This includes a requirement that "[e]ach guest room shall be free of any evidence of insects, rodents, and other pests." Rule 11.16. The presence of bedbugs shall be considered an infestation. Rule 11.16.3. An infestation shall be considered an "imminent health hazard." Rule 4.13. The February inspection noted bedbugs in rooms on both the first and second floor. Ex. J.

The August abatement letter Appellant of multiple critical violations of the Rule at the Cortina Inn. Ex. C. Appellant was given time to correct those violations. *Id.* Despite notice and an opportunity to correct these violations, Appellant failed to do so within the timeframe provided. As a result, the Department suspended Appellant's license for 60 days and until there was compliance with the Rule.

As noted above, the suspension order is not on appeal. The only decision on appeal is the Department's denial of Appellant's request to reinstate their license. Appellant affirmatively sought an inspection in February, believing they were compliant with the Rule. The report and the testimony of Mr. Manfredi and Mr. Shmit clearly show the Cortina Inn was not in compliance with the Rule on February 26, 2025. There were bedbugs in rooms on both the first and second floor of the Cortina Inn. Plumbing was no in compliance with applicable state and local codes. In addition, there were soiled mattresses in several of the rooms. There was an infestation of bedbugs on both floors of the Cortina Inn at the time of the inspection in violation of Rule 11.16.

The requirements to reinstate Appellant's license is laid out in the December suspension order:

The Department shall only reinstate the Licensee's license to operate the Cortina Inn if the Licensee can demonstrate, with such materials and after such inspections requested by the Department and to the satisfaction of the Department, that the Licensee and the Cortina Inn are in full compliance with 18 V.S.A. Ch. 85 and the Rules.

Ex. H. The Department can only reinstate Appellant's license if they can demonstrate full compliance with the Rule. Appellant requested the February inspection. That inspection showed the Cortina Inn was not compliance with the Rule for a variety of reasons, including an infestation of bed bugs on both floors of the inn. Appellant was not entitled to reinstatement at the time of the February inspection.

Appellant argued at the hearing that they had remediated the issues identified in the February inspection report, thus is entitled to reinstatement of their license. Appellant's argument is misplaced. The only decision on appeal is the February decision not to reinstate Appellant's license. Thus, anything that occurred after that decision is not relevant. This does not preclude Appellant from requesting another inspection from the Department if they believe they are now in compliance with the Rule.

### Appellant's Request for a Permanent Injunction

At the hearing, Appellant orally requested a permanent injunction. Appellant's request for a permanent injunction is denied as it was not properly raised in any pleadings. Appellant moved for a temporary restraining order pursuant to V.R.C.P. 65(a) upon commencement of this appeal. The court denied the request for a temporary restraining order on March 7, 2025. The court required Appellant to inform the court by March 14, 2025 if it was seeking a preliminary injunction. No request was received by the court. Appellant did not request a permanent injunction until Attorney Urso did so orally at the final hearing held on March 24, 2025.

This case is an appeal pursuant to V.R.C.P. 74, thus there are no pleadings. V.R.C.P. 74(d). Injunctive relief is a claim that is required to be plead. V.R.C.P. 8(a) ("A pleading which sets forth a claim for relief … shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."). As noted by the Vermont Supreme Court, "A pleading is sufficient under the rule if it gives 'fair notice of the claim and the grounds upon which it rests.' Failure to plead a claim means that the claim is not in the case, and the court may not grant relief on it unless the claim subsequently comes before the court." *In re Waitsfield-Fayston Telephone Co., Inc.,* 2007 VT 55, ¶ 12 (quoting *Limoge v. People's Trust Co.,* 168 Vt. 265, 274, 719 A.2d 888, 893 (1998)). Appellant did not adequately plead a request for permanent injunctive relief. As such, the court cannot grant Appellant's oral request for a permanent injunction.

Moreover, Appellant did not prevail on the merits of its appeals. As such, Appellant is not entitled to an order of this Court that would permanently stay or enjoin the Department's order of December 3, 2024, suspending Appellant's license.

### Conclusion

For the reasons stated above, the court declines to review the December 3, 2024 suspension order due to lack of jurisdiction. The court AFFIRMS the Department's February 28, 2025 decision denying Appellant's request to reinstate its license. The court DENIES Appellant's request for a permanent injunction.

Electronically signed on April 7, 2025 pursuant to V.R.E.F. 9(d)

*Alexander N. Burke*
_____
Alexander N. Burke
Superior Court Judge